**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

THE UPPER DECK COMPANY,

    Plaintiff,

    v.

PIXELS.COM, LLC,

    Defendant.

Case No. 24-cv-00923-BAS-DEB

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO SEAL (ECF No. 114)**

Presently before the Court is Plaintiff Upper Deck Company's ("Upper Deck") renewed motion to seal. (ECF No. 114.) For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Upper Deck's motion in accordance with Appendix A.

## I. BACKGROUND

Defendant Pixels.com ("Pixels") allegedly interfered with Upper Deck's exclusive rights to use intellectual property assets associated with the brand of world-famous basketball player, Michael Jordan ("Jordan"), to develop sports memorabilia. More specifically, Pixels allegedly advertised and sold products appropriating Jordan's likeness online without either Upper Deck's or Jordan's permission. (ECF No. 24 ¶¶ 25–35.) Upper Deck obtained the rights to use Michael Jordan's likeness through licensing agreements. (*Id*. ¶¶ 19–24.) Furthermore, Pixels' products also allegedly misappropriated Upper Deck's own trademarks—including Upper Deck's logo. (*Id*. ¶ 11.)

On May 28, 2024, Upper Deck initiated this action against Defendant Pixels.com ("Pixels"). (ECF No. 1.) On October 1, 2024, Upper Deck filed the operative complaint in this action alleging causes of action, *inter alia*, for: (1) false advertising and unfair competition claims under the Lanham Act, 15 U.S.C.A. § 1125(a); (2) trademark dilution under the Lanham Act, 15 U.S.C.A. § 1125(c); (3) trademark infringement under 15 U.S.C.A. § 1114; (4) deprivation of rights of publicity, Cal. Civ. Code § 3344; (5) deprivation of rights of publicity under California common law; (6) unfair competition under California statutory, Cal. Bus. & Prof. Code § 17200 *et seq*, and common law. (ECF No. 24.)

Throughout the course of this action, both parties filed motions to seal. (*See* ECF Nos. 75, 78, 81, 88, 91, 95, 97, 102, 107.) The Court partially ruled on Parties' proposed redactions and ordered for Parties to file a consolidated motion to seal on July 28, 2025. (ECF No. 110.) Upper Deck filed a motion to seal, consolidating prior motions, on August 8, 2025. (ECF No. 114.) Upper Deck moved to seal specific portions of certain documents, including:

1. An executed licensing agreement between Upper Deck and Jump 23 regarding Upper Deck's rights to use Michael Jordan's intellectual property in its products (ECF Nos. 75 and 78, Ex. 7);

2. An executed agreement between Upper Deck and Brevettar, LLC for Brevettar, LLC to sublicense Upper Deck's rights to use Michael Jordan's intellectual property (ECF Nos. 75, 78, Ex. 10);

3. An executed agreement between Brevettar, LLC and Trends International, LLC for Trends International, LLC to sublicense Brevettar, LLC's rights to use Michael Jordan's intellectual property (ECF No. 78, Ex. 20);

4. An expert report by Upper Deck's expert, Christian Tregillis (ECF No. 78, Ex. 94);

5. An expert rebuttal report by Christian Tregillis (ECF No. 78, Ex. 98);

6. An email between Jump 23 and Upper Deck management attached to Pixels' motion to seal (ECF No. 75, Ex. 105); and

7. An expert report by Pixels' expert, Lindsey Fisher (ECF No. 102, Ex. M).

Upper Deck also moved to seal certain documents in their entirety—including a report of Pixels' sales data (ECF No. 102, Ex. F). Pixels filed a response on August 13, 2025. (ECF No. 123.) In this Order, the Court evaluates Upper Deck's motion to seal. (ECF No. 114.)

## II. LEGAL STANDARD

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc*., 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citing *Foltz v. State Farm Mut. Auto Ins. Co.,* 331 F.3d 1122, 1135 (9th Cir. 2003)). "The presumption of access is 'based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.'" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)).

A party seeking to seal a judicial record bears the burden of overcoming the strong presumption of access. *Foltz*, 331 F.3d at 1135. The showing required to meet this burden depends upon whether the documents to be sealed relate to a motion that is "more than tangentially related to the merits of the case." *Ctr. for Auto Safety*, 809 F.3d at 1101. When the underlying motion is more than tangentially related to the merits, the "compelling reasons" standard applies. *Id*. at 1096–98. When the underlying motion does not surpass the tangential relevance threshold, the "good cause" standard applies. *Id*.

"In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447

F.3d at 1179 (quoting *Nixon*, 435 U.S. at 598). As to this last category, courts have been willing to seal court filings containing confidential business material, "such as marketing strategies, product development plans, licensing agreements, and profit, cost, and margin data," where the parties have been able to point to concrete factual information to justify sealing. *See, e.g., Cohen v. Trump*, No. 13-cv-2519-GPC-WVG, 2016 WL 3036302, at *5 (S.D. Cal. May 27, 2016). However, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179. Similarly, it is not enough to "mention[] a general category of privilege, without any further elaboration or any specific linkage with the documents." *Id*. at 1184. A blanket protective order is not itself sufficient to show "good cause," let alone compelling reasons, for sealing particular documents. *See Foltz*, 331 F.3d at 1133; *San Jose Mercury News, Inc. v. U.S. Dist. Ct., N. Dist*., 187 F.3d 1096, 1103 (9th Cir. 1999). The decision to seal documents is "one best left to the sound discretion of the trial court" upon consideration of the "relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599.

In addition, parties moving to seal documents must comply with the procedures set forth in this Court's Standing Order for filing documents under seal. *See* Standing Order of the Hon. Cynthia Bashant for Civil Cases § 5. These procedures limit sealing to "only those documents, or portions thereof, necessary to protect such sensitive information." *Id*. Thus, although sometimes it may be appropriate to seal a document in its entirety, whenever possible, a party must redact. *See Kamakana*, 447 F.3d at 1183 (noting a preference for redactions so long as they "have the virtue of being limited and clear"); *Murphy v. Kavo Am. Corp*., No. 11-cv-00410-YGR, 2012 WL 1497489, at *2–3 (N.D. Cal. Apr. 27, 2012) (denying motion to seal exhibits but directing parties to redact confidential information).

## III. ANALYSIS

### A. Whether Upper Deck Corrected Procedural Deficiencies Identified in ECF No. 110

1. **Requirement for Parties to Confer and Submit Responses to Support Relevant Motions to Seal**

The Court's Standing Order notes, "[t]he fact that both sides agree to seal a document or that a stipulated protective order was issued is insufficient cause for sealing." Standing Order § 5.A ("§ 5.A"). "Parties often seek to seal a document only because another party designated the document as sensitive under a protective order . . . [i]n these circumstances, the moving party must first meet and confer with the designating party to determine whether the designating party maintains that any portion of the document must be filed under seal." *Id*. Then, "the designating party must file a response to the sealing motion within seven days that satisfies the sealing standard . . . If no response is filed, the Court may order that the document be filed in the public record." *Id*.

Because Upper Deck is the moving party for the present motion to seal (ECF No. 114), the designating party's burden to respond to a sealing motion in § 5.A only applies to documents in which Pixels is the designating party. In Upper Deck's renewed motion to seal and accompanying papers, Upper Decks' attorney has indicated that the above documents were designated as "'CONFIDENTIAL' and/or 'CONFIDENTIAL – FOR COUNSEL ONLY' materials under the Protective Order by Upper Deck **and/or** Pixels." (ECF No. 114-1 ¶ 2 (emphasis added).) From this, it is not clear which party had made the confidentiality designations. Regardless, Pixels has filed an appropriate response (ECF No. 123) to all of the documents that Upper Deck has moved to seal in its renewed motion (ECF No. 114). Accordingly, the Court now finds that § 5.A of the Standing Order does not necessitate the dismissal of any of Upper Deck's motion to seal.

2. **Requirement to Publicly File Copies of Documents with Proposed Redactions**

Since the Court's last order on Parties' motions to seal (ECF No. 110), the documents Upper Deck seeks to redact are correctly lodged on the public docket. (*See* ECF Nos. 110 at 4:26–5:7 (citing ECF Nos. 75, 78, 88, 97, and 107); 76 (lodged ECF No. 75), 82 (lodged ECF No. 78); 89 (lodged ECF No. 88); 98 (lodged ECF No. 97); 108

(lodged ECF No. 107); ECF Nos. 103-3 (lodged ECF No. 102, Ex. F); 103-5 (lodged ECF No. 102, Ex. M).)  Accordingly, since Upper Deck seeks to seal those same documents in its renewed motion to seal (ECF No. 114), the Court now turns to evaluate whether Upper Deck's justifications for sealing or redacting those documents provide sufficiently compelling reasons for sealing pursuant to caselaw.

### B.    Whether Upper Deck Presents Compelling Reasons for its Proposed Redactions

#### 1.    Related Documents More Than Tangentially Related to Merits

As the Court previously found (ECF No. 110 at 4:6-16), Upper Deck's proposed documents to seal are filed in connection with Parties' summary judgment motions (ECF Nos. 74, 79).  *See Pac. Marine Propellers, Inc. v. Wartsila Def., Inc.*, No. 17-CV-555-L-NLS, 2018 WL 11457880, at *1 (S.D. Cal. Nov. 5, 2018) ("The compelling reasons standard applies to all motions except those that are only 'tangentially related to the merits of a case.'. . .  Defendants' summary judgment motion is more than tangentially related to the merits") (citing *Kamakana*, 447 F.3d at 1179).  As such, the Court finds Upper Deck's renewed motion to seal (ECF No. 114) is subject to the "compelling reasons" standard in *Kamakana*, 447 F.3d at 1179.

#### 2.    "Compelling Reasons" Legal Standard

Preventing the release of trade secrets generally constitutes a compelling reason to seal such documents.  *Kamakana,* 447 F.3d at 1179; *see also Nixon,* 435 U.S. at 598 (observing that the "common-law right of inspection has bowed before the power of a court to insure that its records" are not used as "sources of business information that might harm a litigant's competitive standing"); *Apple Inc. v. Samsung Elecs. Co.,* 727 F.3d 1214, 1226–28 (Fed.Cir.2013) (holding that under Ninth Circuit law, detailed product-specific information and internal reports are appropriate to seal under the "compelling reasons" standard where that information could be used to the company's competitive disadvantage).

A "trade secret may consist of any formula, pattern, device or compilation of information which is used in [the party]'s business, and which gives [the party] an

opportunity to obtain an advantage over competitors who do not know or use it." *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569–70 (9th Cir. 2008) (citing *Restatement of Torts* § 757, cmt. B); *see also Clark v. Bunker,* 453 F.2d 1006, 1009 (9th Cir.1972) (adopting the Restatement definition and finding that "a detailed plan for the creation, promotion, financing, and sale of contracts" constitutes a trade secret); *Whyte v. Schlage Lock Co.,* 101 Cal.App.4th 1443, 1455-56, 125 Cal.Rptr.2d 277 (2002).

Even if proposed material for sealing does not constitute a trade secret, it may still be sealable as confidential business information. *See In re Elec. Arts, Inc.*, 298 F. App'x at 569 (finding sealable "business information that might harm a litigant's competitive standing"); *see also Ctr. for Auto Safety*, 809 F.3d at 1097 (citing *Nixon,* 435 U.S. at 598–599) ("sources of business information that might harm a litigant's competitive standing" are subject to sealing); *see also In re Qualcomm Litig.*, No. 3:17-cv-0108-GPC-MDD, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (sealing is warranted to prevent competitors from "gaining insight into the parties' business model and strategy"); *see also Garrity Power Servs. LLC v. Samsung Elecs. Co.*, No. 21-MC-80159-JSC, 2021 WL 3473937, at *1 (N.D. Cal. July 29, 2021) ("confidential business information in the form of 'license agreements, financial terms, details of confidential licensing negotiations, and business strategies' is sealable").

However, not all business information is so confidential or sensitive that it must be sealed. *See, e.g., Open Text S.A. v. Box, Inc*., No. 13-04910, 2014 U.S. Dist. LEXIS 177484, 2014 WL 7368594, at *3 (N.D. Cal. Dec. 26, 2014) (declining to seal, for example, information about a litigant's "product design and source code and highly confidential and competitively sensitive business information including usage data," in the absence of demonstrating "specific compelling reasons"); *GoDaddy.com LLC v. RPost Commc'ns Ltd.,* No. 14-00126, 2014 WL 2117349, at *1 (D. Ariz. May 21, 2014) ("[A] party's allegations that material is 'confidential' or 'business information' are insufficient to justify sealing court records containing such material unless the party proves the existence of

24cv923

compelling reasons such as those set forth in *Kamakana*.... "[O]nly in extremely limited circumstances will confidential information actually merit the sealing of court records.").

In the Ninth Circuit, trade secrets, specific pricing terms, royalty rates, and similar data are commonly sealed. *See, e.g., In re Elec. Arts, Inc.,* 298 F. App'x 568, 569 (9th Cir. 2008). For information that falls outside of those categories, movants must particularly allege how their proposed redactions relate to confidential information that should be sealed. *See Perez v. Blue Mountain Farms*, No. 2:13-CV-5081-RMP, 2015 WL 11112413, at *4 (E.D. Wash. Sept. 28, 2015) ("Defendants' redactions and any claims of privilege or withholding of information must be explained with particularity as to why that information should be protected pursuant to Fed. R. Civ. P. 26(b)(5)(A)"); *see also Ketayi v. Health Enrollment Grp.*, No. 3:20-CV-1198-RSH-KSC, 2023 WL 12007132, at *2 (S.D. Cal. June 28, 2023) ("Compelling reasons may exist to seal some of the redacted information in this record as confidential business information, but not for the broad redactions HII proposes.").

Importantly, "[t]he proponent of sealing bears the burden with respect to sealing. A failure to meet that burden means that the default posture of public access prevails." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1182 (9th Cir. 2006).

### 3.    "Narrowly Tailored" Legal Standard

"Only those documents, or portions thereof, necessary to protect such sensitive information" may be sealed. Standing Order § 5.A. As such, whenever possible, the moving party must redact only what is necessary. *See Kamakana*, 447 F.3d at 1183; *Murphy*, 2012 WL 1497489, at *2–3. Redactions must be narrowly tailored such that only information that meets the compelling reasons standard is redacted. *See Kamakana*, 447 F.3d at 1183 (highlighting the "limited and clear" nature and specificity of the redactions); *ImprimisRx, LLC v. OSRX, Inc.*, No. 21-cv-01305-BAS-DL, 2023 WL 7029210, at *4 (S.D. Cal. Oct. 24, 2023) (rejecting redactions that were insufficiently tailored). The moving party must provide the compelling reason justifying the proposed redactions. *Foltz*, 331 F.3d at 1135.

Litigation predicated upon contracts cannot be conducted in secret. *JBS Packerland, Inc. v. Phillips Cattle Co., Inc.*, No. 24-cv-01299-BAS-MSB, 2024 WL 4280960, at *2 (S.D. Cal. Sept. 24, 2024).  The public has the right to know the gist of the underlying agreements in order to understand the court's rulings.  *Id.*  Accordingly, mere vague or ambiguous references to sealed documents, without any discussion of the substance of the sealed documents, do not meet the compelling reasons standard.  *See Nia v. Bank of Am., N.A.*, No. 21-cv-1799-BAS-BGS, 2024 WL 171659, at *9 (S.D. Cal. Jan. 12, 2024); *ImprimisRx, LLC*, 2023 WL 7029210, at *5.  Information already available to the public also cannot meet the compelling reasons standard.  *See id.* at 1184.

### 4.    Analysis of Compelling Reasons

#### i.    Financial Data (*e.g.*, Gross Revenue Amount, and Sales Data) and Damages Calculation

"Sales data may constitute a trade secret if it is not readily ascertainable from a public source but instead developed with a substantial amount of time, effort, and money." *Yeiser Rsch. & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1046 (S.D. Cal. 2017).  Here, it is apparent that Pixels has expended substantial effort to calculate its sales data and gross revenue from the various spreadsheets, tables, and expert reports Upper Deck moves to seal.  The Court has also previously found that Pixels' financial data is subject to sealing. (ECF No. 110 at 10:21–11:20.)

Thus, the Court **GRANTS** Upper Deck's request to seal Pixels' financial data—including in sealing Exhibit F to Upper Deck's motion to seal (ECF No. 102), which the Court has previously found to be sealable (ECF No. 110 at 11:4-6).  Along the same vein, the Court also **GRANTS** sealing experts' damages calculations based upon Pixels' financial data.  (*Id.* at 10:21–11:20.)

#### ii.    Licensing Agreement Terms

The Ninth Circuit has held that licensing agreement terms are sealable trade secrets when such terms provide a plan for the formation and sale of contracts.  *In re Elec. Arts, Inc.*, 298 F. App'x at 569–70 (finding license agreement to be a trade secret); *France*

- 9 -

*Telecom S.A. v. Marvell Semiconductor Inc*., No. 12-CV-04967-WHO, 2014 WL 4965995, at *3 (N.D. Cal. Oct. 3, 2014) ("the information at issue—terms of a license agreement—constitutes trade secrets and is properly sealed"). Those terms may constitute trade secrets because their public disclosure may hinder the trade secret holder's market competitiveness and participation. *See e.g*., *In re NCAA Student-Athlete Name & Likeness Licensing Litig.,* No. C 09-1967 CW, 2014 WL 662545, at *1 (N.D. Cal. Feb. 20, 2014) ("Because the public disclosure of some of these terms may undermine NCAA's ability to negotiate future licensing agreements with other broadcasters, these terms may be sealed.").

However, there are limitations on the extent to which terms of a licensing agreement can be sealed. For example, if certain terms are "otherwise publicly known," they may not be sealable. *Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.,* 340 F. Supp. 3d 934, 1004 (N.D. Cal. 2018). Additionally, if terms of licensing agreements that appear to be boilerplate contractual terms, courts may require the moving party to "explain[] why [those] provisions are so unique to that agreement that disclosure would cause significant harm." *Id.* Further, even when courts have found licensing terms to constitute trade secrets, they have still limited permissible redactions to only specific portions of those clauses. *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2014 WL 662545, at *1 ("only the specific dollar amounts. . . may be sealed"); *O'Bannon v. Nat'l Collegiate Athletic Ass'n***,** No. C 09-3329 CW, 2014 WL 12997312, at *1 (N.D. Cal. June 10, 2014) (same).

### a.    Royalty Rate, Minimum Guarantee, and Compensation Clauses

It is well-established in the Ninth Circuit that "pricing terms, royalty rates, and guaranteed minimum payment terms" are sealable trade secrets. *In re Elec. Arts, Inc*., 298 F. App'x at 569–70; *see also Clark v. Bunker,* 453 F.2d 1006, 1009 (9th Cir.1972) (adopting the Restatement definition and finding that "a detailed plan for the creation, promotion, financing, and sale of contracts" constitutes a trade secret) (citing *Whyte v. Schlage Lock Co.,* 101 Cal.App.4th 1443, 1455-56, 125 Cal.Rptr.2d 277 (2002)).

- 10 -

Thus, the Court **GRANTS** sealing the specific numerical values of royalty rate minimum guarantee and compensation terms.  *See In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2014 WL 662545, at *1 ("only the specific dollar amounts. . . may be sealed"); *O'Bannon*, 2014 WL 12997312, at *1 (same).  To clarify, the numerical values of royalty rates, minimum guarantee, and compensation should also be sealed in other documents (such as expert reports) discussing those values.

### b.    Sample Review and Approval

Upper Deck also moves to redact the number of sample products that it provides its licensor for review and approval prior to sale distribution.  The Court finds that like terms of a licensing agreement providing royalty rates and minimum guarantees, terms detailing the process through which Upper Deck—as licensee of certain intellectual property assets—submits its products for review by its licensor can constitute a trade secret.  Those terms provide a blueprint for product development strategy, which if revealed, could provide competitors an economic advantage.  *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09md2087 BTM (AJB), 2011 WL 864897, *2 (S.D. Cal. Mar. 11, 2011) (finding compelling reasons to seal documents containing information revealing business and marketing strategy and product development); *see also In re ConAgra Foods, Inc.*, No. CV1105379MMMAGRX, 2014 WL 12577132, at *5 (C.D. Cal. July 11, 2014) (finding compelling reasons to seal given "the inclusion of trade secrets such as a company's internal strategies, marketing research, sales data, and product development plans").  Accordingly, the Court **GRANTS** sealing the number of samples for review and approval.

### c.    Signature-Related Terms

Upper Deck further moves to redact the number of signatures and signature alternatives that its licensor agreed for Michael Jordan to contribute for the development of Upper Deck's products and services.  Here, the Court also finds that terms related to the provision of signatures are part of the product development process.  *In re Hydroxycut Mktg. & Sales Practices Litig.*, 2011 WL 864897, *2 (finding compelling reasons to seal

- 11 -

documents containing information revealing business and marketing strategy and product development). Accordingly, the Court **GRANTS** sealing signature-related terms.

### d.    Personal Services Rendered by Michael Jordan

Upper Deck further moves to redact personal services (*e.g.*, autograph sessions) that its licensor agreed for Michael Jordan to contribute for the development of Upper Deck's products and services. Here, the Court also finds that terms related to the provision of personal services are part of the business and product development processes. *In re Hydroxycut Mktg. & Sales Practices Litig.*, 2011 WL 864897, *2 (finding compelling reasons to seal documents containing information revealing business and marketing strategy and product development). Accordingly, the Court **GRANTS** sealing personal service-related terms.

### e.    Third-Party Information (*e.g.*, Names)

The identities of third parties are generally not sealable as trade secrets unless the movant "provide[s] a particularized showing that specific harm will result if the [identities are] made publicly available." *Apple Inc. v. Samsung Elecs. Co.,* No. 11-CV-01846 LHK PSG, 2012 WL 4120541, at *2 (N.D. Cal. Sept. 18, 2012); *see also Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-CV-00564 NC, 2018 WL 10472795, at *2 (N.D. Cal. Apr. 23, 2018) ("The identity of Dr. Pepper's third-party vender, Givaudan is not sealable as a trade secret under the compelling reasons standard"). Here, Upper Deck has not provided any justification for how revealing the identities of third parties in the contracts would result in particularized harm to its market position. Further, Upper Deck has failed to allege how third-party information involves any other privacy interests that "outweigh the traditional right of public access" in *Kamakana*, 447 F.3d at 1178. *See also Bunsow De Mory LLP v. N. Forty Consulting LLC*, No. 20-CV-04997-JSC, 2021 WL 4521143, at *7 (N.D. Cal. Jan. 22, 2021) (rejecting motion to seal because "the names of third-parties in this action constitute neither trade secrets nor confidential information"). Though the identities of third parties in licensing agreements may be sealable in some circumstance, such as when the "existence of the agreement[s]. . . [are] not otherwise

publicly known," Upper Deck has failed to allege any such circumstances here.  *See Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*, 340 F. Supp. 3d 934, 1004 (N.D. Cal. 2018).  Thus, the Court **DENIES WITHOUT PREJUDICE** Upper Deck's requested redactions of third-party information.

### f.    Sublicenses, Dates, Term Lengths of Agreements

Boilerplate contract terms are generally not sealable.  *Virun, Inc. v. Cymbiotika, LLC*, No. 822CV00325SSSDFMX, 2022 WL 17401698, at *2 (C.D. Cal. Aug. 19, 2022).  "Form contracts . . . that do not contain any confidential information may nevertheless be sealed if" their dissemination would create a competitive disadvantage.  *Id*.  The excerpts Upper Deck seeks to seal regarding sublicensing, agreement dates, and agreement term lengths are common provisions in licensing agreements.  *Cf Novartis Vaccines & Diagnostics, Inc. v. Genentech, Inc.*, No. 5:21-CV-04874-EJD, 2022 WL 689005, at *2 (N.D. Cal. Feb. 14, 2022) ("parties provide no support for why a general description of the nature of the Licensing Agreement—particularly a general description that reveals provisions and terms common to virtually all patent licensing agreements—should be sealed.")  While it may be true that competitors could gain a commercial advantage upon discovering the term length of the agreements at issue in this litigation, Upper Deck has not made a particularized showing of why that may be beyond merely noting that the aforementioned terms constitute trade secrets.  *See In re Sotera Wireless, Inc.*, 591 B.R. 453, 462 (S.D. Cal. 2018), *aff'd*, 794 F. App'x 625 (9th Cir. 2020) ("[T]he mere statement that something is a trade secret falls far short of what the Court needs to find that [movant] has met its burden of proof. . .").  Additionally, Upper Deck does not provide additional reasoning for why such terms should be sealed—meaning Upper Deck has failed to overcome the presumption of public access.  *Kamakana*, 447 F.3d at 1178.  Thus, the Court **DENIES WITHOUT PREJUDICE** Upper Deck's requests to redact provisions regarding sublicensing, agreement dates, and agreement term lengths.

### g.    Damages-Related Licensing Terms (*e.g*., Related to Violation)

- 13 -

Upper Deck has failed to provide particularized justification for why licensing provisions relating to damages constitute either trade secrets or confidential information. *See In re Sotera Wireless, Inc*., 591 B.R. at 462 ("[T]he mere statement that something is a trade secret falls far short of what the Court needs to find that [movant] has met its burden of proof. . ."); *cf GoDaddy.com LLC v. RPost Commc'ns Ltd.,* No. CV-14-00126-PHX-JAT, 2016 WL 1158851, at *5 (D. Ariz. Mar. 24, 2016) ("Whether Mr. Smith properly apportioned damages is an issue that GoDaddy strongly disputes. . . and thus, the public has a high interest in this information to understand the judicial process. In the absence of compelling reasons as to why this information merits sealing, the Court will not authorize Exhibit 4 to be sealed.").

Thus, the Court finds Upper Deck has failed to meet its burden of proof to overcome the "traditional right of public access," *Kamakana*, 447 F.3d at 1178, and **DENIES WITHOUT PREJUDICE** Upper Deck's request to seal damages provisions of licensing agreements.

### iii.    Lease Agreement Terms

Upper Deck moves to seal portions of ECF Nos. 75, 78, Ex. 10 regarding commercial lease agreements, including the text detailing the amount of security deposit, length of term of the agreement, and the amount of rent.  Courts within the Ninth Circuit have held that, without further explaining why terms of a lease should be subject to sealing, movants cannot "outweigh the traditional right of public access" by merely stating that such terms are confidential.  *MTO Summerlin LLC v. Shops at Summerlin N., LP*, No. 218CV00737GMNPAL, 2019 WL 1261105, at *4 (D. Nev. Mar. 19, 2019) (applying *Kamakana*, 447 F.3d at 1178).  Similarly, here, Upper Deck does not explain how lease terms in the record constitute either trade secrets or otherwise confidential information that should be sealed beyond merely stating they should be sealed due to "privacy" concerns.  Thus, the Court **DENIES WITHOUT PREJUDICE** Upper Deck's proposed redactions to seal lease terms.

### iv.    Jordan Signature

Upper Deck also moves to redact Jordan's signature from ECF Nos. 75, 78, Ex. 7. However, Upper Deck has failed to allege that Jordan's signature is "not readily ascertainable from a public source" such that it is a trade secret, or that such data should be protected on any other ground of confidentiality. *See Yeiser Rsch. & Dev. LLC*, 281 F. Supp. 3d at 1046. In absence of any particularized showing, the Court finds that Upper Deck has not met its burden of proof to overcome the presumption of public access. *Kamakana*, 447 F.3d at 1179.

### v. Exhibit 105

"An unsupported assertion of 'unfair advantage' to competitors without explaining 'how a competitor would use th[e] information to obtain an unfair advantage' is insufficient." *Hodges v. Apple, Inc.,* No. 13–cv–01128–WHO, 2013 WL 6070408, at *2 (N.D. Cal. Nov. 18, 2013). Since Upper Deck has not provided reasoning for how the email chain discussion would be "advantageous for competitors and unscrupulous actors to know" beyond stating as such (ECF No. 114 at 9:3-7), the Court also **DENIES WITHOUT PREJUDICE** sealing Exhibit 105 to Pixels' motion to seal (ECF No. 78)— which concerns how Upper Deck may use Jordan's image to develop new products.

* * *

In sum, the Court broadly rules on Upper Deck's motion to seal as follows:

| Order Section | Type of Information | Court's Ruling |
|---|---|---|
| III.B.4.i | Financial Data (e.g., Gross Revenue and Sales Data) and Damages Calculation | GRANTED |
| III.B.4.ii.a | Royalty Rate, Minimum Guarantee, and Compensation Clauses in Licensing Agreements | GRANTED |
| III.B.4.ii.b | Sample Review & Approval Provisions in Licensing Agreements | GRANTED |

| Order Section | Type of Information | Court's Ruling |
|---|---|---|
| III.B.4.ii.c | Signature-Related Terms in in Licensing Agreements | GRANTED |
| III.B.4.ii.d | Terms Regarding Personal Services Rendered by Michael Jordan in Licensing Agreements | GRANTED |
| III.B.4.ii.e | Third-Party Information (e.g., Names) in Licensing Agreements | DENIED WITHOUT PREJUDICE |
| III.B.4.ii.f | Sublicenses, Dates, Term Lengths of Licensing Agreements | DENIED WITHOUT PREJUDICE |
| III.B.4.ii.g | Damages-Related Licensing Terms | DENIED WITHOUT PREJUDICE |
| III.B.4.iii. | Lease Agreement Terms | DENIED WITHOUT PREJUDICE |
| III.B.4.iv. | Jordan's Signature | DENIED WITHOUT PREJUDICE |
| III.B.4.v. | Exhibit 105 to Pixels' Motion to Seal (ECF No. 78) | DENIED WITHOUT PREJUDICE |

The Court includes Appendix A, providing an individual ruling on each of Upper Deck's proposed redactions.

## IV.    CONCLUSION

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** Upper Deck's renewed motion to seal (ECF No. 114), in accordance with Appendix A. If Upper Deck or Pixels wishes to file a renewed motion to seal for the denied requests, they may do so no later than **<u>December 23, 2025</u>**, after the issuance of this order. To the extent either Party wishes to renew its motion to seal for any document or portion thereof, that party is **ORDERED** to append to its briefing a table similar to that in the Appendices to

this Order listing: the title of the document, the ECF number of the public document, the ECF number of the lodgment, the page and line number(s) *or* the section *or* paragraph numbers of the proposed redactions (or stating that the party wishes to seal the entirety of the document), and the compelling reason for sealing each proposed redaction or document.

Otherwise, Upper Deck and Pixels are instructed to file the unredacted versions of the aforementioned documents as directed by the Court in this Order on the public docket no later than **December 30, 2025**.  Parties shall publicly file on CM/ECF as a "Notice Regarding Exhibit Attachment" revised versions of these documents with only those redactions that the Court has approved.  When filing the documents on the public docket, Parties must strictly adhere to the relevant Federal Rules of Civil Procedure, this district's Civil Local Rules, this Court's Standing Order for Civil Cases, and this district's Electronic Case Filing Administrative Policies & Procedures Manual.  Non-compliance with this order or any relevant rules may result in sanctions pursuant to Civil Local Rule 83.1.  Further, the Clerk of Court shall **ACCEPT** and **FILE UNDER SEAL** any documents accompanying ECF No. 115.

**IT IS SO ORDERED.**

**DATED: December 9, 2025**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

24cv923

APPENDIX A

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---------|----------|--------------------------------------|----------------|
| Exhibit 7 to the Pixels' Motions to Seal (ECF Nos. 75 and 78) -- Upper Deck and Jump 23, Inc.'s executed Endorsement Agreement | § 2 (A) | This should remain confidential as it is trade secret data related to the scope of the license. Public exposure could allow competitors and unscrupulous actors to exploit new technologies and attempt to circumvent the scope | **GRANTED IN PART.** The Court has reasoned that terms of licensing agreement related to the development of Upper Deck's products can be redacted, *supra* §§ III.B.4.ii.b-d. The Court, thus, agrees to redact all words in the proposed provisions, except for first two words of § 2(A)(i) and first five words of § 2(A)(ii) of the licensing agreement quoted here. It is clear from the public record that Upper Deck has licensed intellectual property assets to create trading cards and memorabilia. (*See e.g.*, ECF No. 24 ¶ 2.) As such, redacting the entirety of §§ 2(A)(i)-(ii) would not be narrowly tailored to protect necessary information. *See Kamakana*, 447 F.3d at 1183 |
| | § 2(B) | This should remain confidential as it is trade secret data related to the scope of the license. Public exposure could allow competitors and unscrupulous actors | **GRANTED,** since this provision entirely relates to the product development process through which Upper Deck collaborates with its licensors. *See In re Hydroxycut Mktg. & Sales* |

- 18 -

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---|---|---|---|
| | | to exploit new technologies and attempt to circumvent the scope. | *Practices Litig.*, 2011 WL 864897, *2. |
| | Footnote 1 | This should remain confidential as it is trade secret data related to the scope of the license. Public exposure could allow competitors and unscrupulous actors to exploit new technologies and attempt to circumvent the scope. | **GRANTED**, since proposed redaction entirely relates to the product development process through which Upper Deck collaborates with its licensors. *See In re Hydroxycut Mktg. & Sales Practices Litig.*, 2011 WL 864897, *2. |
| | § 2(C) | This should remain confidential as it is trade secret data related to the scope of the license. Public exposure could allow competitors and unscrupulous actors to exploit new technologies and attempt to circumvent the scope. | **DENIED WITHOUT PREJUDICE**, since it is clear on the public record that Upper Deck has the "exclusive right to use Jordan's rights, including his marks described above, on memorabilia, photographs, collectibles, and other products." (ECF No. 24 ¶ 48.) Information already available to the public cannot meet the compelling reasons standard. *Kamakana*, 447 F.3d at 1184. |
| | § 4(B) | Trade secret – number of samples for review and approval | **GRANTED**, *supra* § III.B.4.ii.b. |

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---------|----------|--------------------------------------|----------------|
| | § 5(a) | Trade secret – number of signatures | **GRANTED**, *supra* § III.B.4.ii.c. |
| | § 5(b) | Trade secret – types of signature alternatives | **GRANTED**, *supra* § III.B.4.ii.c. |
| | § 6 | Trade secret – Minimum compensation | **GRANTED**, *supra* § III.B.4.ii.a. |
| | § 7(A) | Trade Secret – royalty rate | **GRANTED**, *supra* § III.B.4.ii.a. |
| | § 8(C) | This should remain confidential as it is trade secret data related to the scope of the license. Public exposure could allow competitors and unscrupulous actors to exploit new technologies and attempt to circumvent the scope. | **GRANTED**, since proposed redaction entirely relates to the product development process through which Upper Deck collaborates with its licensors. *See In re Hydroxycut Mktg. & Sales Practices Litig.*, 2011 WL 864897, *2. Further, the information in the proposed redaction is not otherwise publicly available in this action's record. *Kamakana*, 447 F.3d at 1184. |
| | § 13 | Trade secret – length of term for agreement | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.f. |
| | § 19 | Trade secret – interest rate upon breach | **GRANTED**, *supra* §§ III.B.4.ii.a, III.B.4.ii.g. |
| | § 24(a) | Trade secret – length of term of agreement | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.f. |
| | UpperDeck 270 | Jordan signature | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.iv. |

- 20 -

24cv923

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---|---|---|---|
| | UpperDeck 271 | Jordan signature | **DENIED WITHOUT PREJUDICE,** *supra* § III.B.4.iv. |
| | UpperDeck 272 | Jordan signature and length of term for agreement | **DENIED WITHOUT PREJUDICE,** *supra* §§ III.B.4.ii.f, III.B.4.iv. |
| | UpperDeck 273 | Jordan signature | **DENIED WITHOUT PREJUDICE,** *supra* § III.B.4.iv. |
| | UpperDeck 274 | Jordan signature | **DENIED WITHOUT PREJUDICE,** *supra* § III.B.4.iv. |
| Exhibit 10 to Pixels' Motions to Seal (ECF Nos. 75 and 78) -- Brevettar and Upper Deck Business Alliance Agreement | UpperDeck 301, § 1.1 | Trade secret – gross revenue amount | **GRANTED,** *supra* § III.B.4.i. |
| | UpperDeck 306, § 1 | Trade secret and privacy – names of third parties | **GRANTED,** *supra* § III.B.4.ii.e. |
| | UpperDeck 314 | Privacy - Lease terms for rent, security deposit and length of term | **DENIED WITHOUT PREJUDICE,** *supra* § III.B.4.iii. |
| | UpperDeck 332 | Privacy - Lease terms for rent | **DENIED WITHOUT PREJUDICE,** *supra* § III.B.4.iii. |
| | UpperDeck 335 | Privacy – Tenant improvement allowance | **DENIED WITHOUT PREJUDICE,** *supra* § III.B.4.iii. |
| | UpperDeck 340 | Privacy - Lease terms for rent, security deposit and length of term | **DENIED WITHOUT PREJUDICE,** *supra* §§ III.B.4.ii.f, III.B.4.iii. |
| Exhibit 20 to Pixels' Motion to | UpperDeck 66 | Trade Secret – date of agreement | **DENIED WITHOUT PREJUDICE,** *supra* § III.B.4.ii.f. |

24cv923

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---|---|---|---|
| Seal (ECF No. 78) -- Licensing Agreement between Brevettar and Trends International, LLC | UpperDeck 66, § A.3 | Trade secret and privacy – names of third parties | **DENIED WITHOUT PREJUDICE**, *supra* §§ III.B.4.ii.e, III.B.4.ii.f. |
| | UpperDeck 67, § A.6 | Trade secret and privacy – names of third parties | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.e. |
| | UpperDeck 67, § D | Trade secret – Length of contract term | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.f. |
| | UpperDeck 67, § E | Trade secret and privacy – Royalty information | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.a. |
| | UpperDeck 68, § F | Trade secret and privacy – Minimum Guarantee | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.a. |
| | UpperDeck 68, § G | Trade secret – number of samples to be approved | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.b. |
| | UpperDeck 68, § H | Trade secret and privacy – Royalty information and guarantee payment | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.a. |
| | UpperDeck 69, § 1 | Trade secret – damages for violation | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.g. |
| | UpperDeck 83, §§ 2, 3 | Trade secret and privacy – third party information | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.e. |
| | UpperDeck 88 | Trade secret – date of agreement | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.f. |
| Exhibit 98 to Pixels' Motion to Seal (ECF No. 78) | § 1.1, #3.3 | Trade secret and privacy – damage calculations | **GRANTED**, *supra* § III.B.4.ii.a. |
| | ¶ 9 | Pixels sales data and damage calculation | **GRANTED IN PART**, *supra* § III.B.4.i. |
| | ¶¶ 11–12 | Pixels sales data and damage calculation | **GRANTED**, *supra* § III.B.4.i. |

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---|---|---|---|
| | ¶¶ 14–16 | Pixels sales data and damage calculation and royalty rates | **GRANTED**, *supra* § III.B.4.i. |
| | ¶ 16 | Trade secret and privacy – third party names, royalty rates and minimum guarantee | **GRANTED**, *supra* §§ III.B.4.i, III.B.4.ii.e. |
| | ¶¶ 19-20 | Trade secret and privacy – royalty rates and damage calculations and Pixels sales data | **GRANTED**, *supra* §§ III.B.4.i, III.B.4.ii.e. |
| | ¶ 22 | Trade secret – length and scope of license | **GRANTED IN PART.** The Court has reasoned that terms of licensing agreement related to the development of Upper Deck's products can be redacted, *supra* §§ III.B.4.ii.b-d. The Court, thus, agrees to redact all words in the proposed provisions, except for first two words of § 2(A)(i) and first five words of § 2(A)(ii) of the licensing agreement quoted here. It is clear from the public record that Upper Deck has licensed intellectual property assets to create trading cards and memorabilia. (*See e.g.*, ECF No. 24 ¶ 2.) As such, redacting the entirety of §§ 2(A)(i)-(ii) would not be narrowly tailored to |

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---|---|---|---|
| | | | protect necessary information. *See Kamakana*, 447 F.3d at 1183. |
| | ¶ 24 | Trade secret – length and scope of license and damage calculation | **DENIED WITHOUT PREJUDICE** redaction of date of licensing agreement, *supra* § III.B.4.ii.f; **GRANTED** redaction of damage calculation, *supra* § III.B.4.ii.g. |
| | ¶ 25 | Trade secret and privacy – third party names, royalty rates and minimum guarantee | **DENIED WITHOUT PREJUDICE** redaction of third party names, *supra* § III.B.4.ii.e; **GRANTED** redaction of royalty rates and minimum guarantee, *supra* § III.B.4.ii.a. |
| | ¶ 27 | Trade secret and privacy – third party names, royalty rates and minimum guarantee | **DENIED WITHOUT PREJUDICE** redaction of third party names, *supra* § III.B.4.ii.e; **GRANTED** redaction of royalty rates, *supra* § III.B.4.ii.a. |
| | ¶¶ 29, 31 | Trade secret and privacy – third party names, royalty rates and minimum guarantee and damage calculation | **DENIED WITHOUT PREJUDICE** redaction of third party names, *supra* § III.B.4.ii.e; **GRANTED** redaction of royalty rates, minimum guarantee, and damage calculation, *supra* § III.B.4.ii.a. |
| | ¶ 33 | Trade secret and privacy – royalty rates and damage calculation | **GRANTED** redaction of royalty rates and damage calculation, *supra* § III.B.4.ii.a. |

24cv923

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---------|----------|--------------------------------------|----------------|
| | p. 14 | Trade secret and privacy – damage calculation | **GRANTED** redaction of royalty rates and damage calculation, *supra* § III.B.4.ii.a. |
| | p. 16 | Trade secret and privacy – Pixels sales data and damage calculation | **GRANTED** redaction of Pixels sales data and damage calculation, *supra* § III.B.4.ii.a. |
| | Schedule R1 | Trade secret and privacy – Pixels sales data and damage calculation | **GRANTED** redaction of Pixels sales data and damage calculation, *supra* § III.B.4.ii.a. |
| Exhibit 94 to Pixels' Motion to Seal (ECF No. 78) | § 1.1 | Trade secret – damage assessment | **GRANTED** redaction of damage assessment, *supra* § III.B.4.ii.a. |
| | ¶ 26 | Trade secret – Pixels sale data | **GRANTED** redaction of Pixels sales data, *supra* § III.B.4.ii.a. |
| | ¶ 36 | Trade secret – date and length of agreement | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.f. |
| | ¶ 37 | This should remain confidential as it is trade secret data related to the scope of the license. Public exposure could allow competitors and unscrupulous actors to exploit new technologies and attempt to circumvent the scope | **GRANTED IN PART.** The Court has reasoned that terms of licensing agreement related to the development of Upper Deck's products can be redacted, *supra* §§ III.B.4.ii.b-d. The Court, thus, agrees to redact all words in the proposed provisions, except for first two words of § 2(A)(i) and first five words of § 2(A)(ii) of the licensing agreement quoted here. It is clear from the public record that Upper Deck has |

24cv923

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---|---|---|---|
| | | | licensed intellectual property assets to create trading cards and memorabilia. (*See e.g.*, ECF No. 24 ¶ 2.) As such, redacting the entirety of §§ 2(A)(i)-(ii) would not be narrowly tailored to protect necessary information. *See Kamakana*, 447 F.3d at 1183. |
| | ¶ 38 | This should remain confidential as it is trade secret data related to the scope of the license. Public exposure could allow competitors and unscrupulous actors to exploit new technologies and attempt to circumvent the scope | **GRANTED**, since proposed redaction entirely relates to the product development process through which Upper Deck collaborates with its licensors. *See In re Hydroxycut Mktg. & Sales Practices Litig.*, 2011 WL 864897, *2. Further, the information in the proposed redaction is not otherwise publicly available in this action's record. *Kamakana*, 447 F.3d at 1184. |
| | ¶ 41 | Trade secret and privacy – personal requirements and alternatives to signatures | **GRANTED**, *supra* § III.B.4.ii.c-d. |
| | ¶¶ 42–44 | Trade secret and privacy – compensation, royalty rate, and length of agreement | **GRANTED** for redaction of compensation and royalty rate, *supra* § III.B.4.ii.a; **DENIED** for redaction of length of |

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---|---|---|---|
| | | | agreement, *supra* § III.B.4.ii.f. |
| | | Trade secret and privacy –length of agreement | DENIED WITHOUT PREJUDICE, *supra* § III.B.4.ii.f. |
| | ¶¶ 47-49 | | |
| | ¶ 50 | Trade secret and privacy –length of agreement, third party names | DENIED WITHOUT PREJUDICE, *supra* §§ III.B.4.ii.e, III.B.4.ii.f |
| | ¶ 51 | Trade secret – number of samples | DENIED WITHOUT PREJUDICE, *supra* § III.B.4.ii.b |
| | ¶ 53 | Trade secret and privacy –length of agreement, third party names and royalty rates | DENIED WITHOUT PREJUDICE for length of agreement and third party names, *supra* §§ III.B.4.ii.e-f; GRANTED for royalty rates, *supra* § III.B.4.ii.a. |
| | ¶ 54 | Trade secret and privacy –minimum guarantee and payment schedule | GRANTED, *supra* § III.B.4.ii.a. |
| | ¶ 55 | Trade secret and privacy – third party names | DENIED WITHOUT PREJUDICE, *supra* § III.B.4.ii.e. |
| | ¶¶ 56–59 | Trade secret and privacy –length of agreement, third party names and minimum guarantee | DENIED WITHOUT PREJUDICE for length of agreement and third party names, *supra* §§ III.B.4.ii.e-f; GRANTED for minimum guarantee values, *supra* § III.B.4.ii.a. |
| | ¶¶ 60–62 | Trade secret and privacy –length of | DENIED WITHOUT PREJUDICE for length |

24cv923

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---|---|---|---|
| | | agreement, third party names | of agreement and third party names, *supra* §§ III.B.4.ii.e-f. |
| | ¶¶ 63–64 | Trade secret and privacy –length of agreement, third party names and minimum guarantee and royalty rates | **DENIED WITHOUT PREJUDICE** for length of agreement and third party names, *supra* §§ III.B.4.ii.e-f; **GRANTED** for minimum guarantee values and royalty rates, *supra* § III.B.4.ii.a. |
| | ¶¶ 65–66 | Trade secret and privacy –length of agreement, third party names and minimum guarantee and royalty rates | **DENIED** for length of agreement and third party names, *supra* §§ III.B.4.ii.e-f; **GRANTED** for minimum guarantee values and royalty rates, *supra* § III.B.4.ii.a. |
| | ¶¶ 67–68 | Trade secret and privacy – third party names | **DENIED WITHOUT PREJUDICE** for third party names, *supra* § III.B.4.ii.e. |
| | ¶¶ 69–70 | Trade secret and privacy – third party names | **DENIED WITHOUT PREJUDICE** for third party names, *supra* § III.B.4.ii.e. |
| | ¶¶ 71–73 | Trade secret and privacy – third party names, length of the agreement, royalty rates and minimum guarantee | **DENIED WITHOUT PREJUDICE** for length of agreement and third party names, *supra* §§ III.B.4.ii.e-f; **GRANTED** for minimum guarantee values and royalty rates, *supra* § III.B.4.ii.a. |
| | ¶¶ 74–75 | Trade secret and privacy – third party names | **DENIED WITHOUT PREJUDICE** for third party information, *supra* § III.B.4.ii.e. |

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---|---|---|---|
| | ¶¶ 76–77 | Trade secret and privacy – third party names, length of the agreement, royalty rates and minimum guarantee | **DENIED WITHOUT PREJUDICE** for length of agreement and third party names, *supra* §§ III.B.4.ii.e-f; **GRANTED** for minimum guarantee values and royalty rates, *supra* § III.B.4.ii.a. |
| | ¶¶ 78–79 | Trade secret and privacy – third party names, length of the agreement, royalty rates and minimum guarantee | **DENIED WITHOUT PREJUDICE** for length of agreement and third party names, *supra* §§ III.B.4.ii.e-f; **GRANTED** for minimum guarantee values and royalty rates, *supra* § III.B.4.ii.a. |
| | ¶¶ 79–80 | Trade secret and privacy – third party names | **DENIED WITHOUT PREJUDICE** for third party names, *supra* § III.B.4.ii.e |
| | ¶¶ 81–82 | Trade secret and privacy – third party names, length of the agreement, royalty rates and minimum guarantee | **DENIED WITHOUT PREJUDICE** for length of agreement and third party names, *supra* §§ III.B.4.ii.e-f; **GRANTED** for minimum guarantee values and royalty rates, *supra* § III.B.4.ii.a. |
| | ¶¶ 82–83 | Trade secret and privacy – third party names, length of the agreement, royalty rates and minimum guarantee | **DENIED WITHOUT PREJUDICE** for length of agreement and third party names, *supra* §§ III.B.4.ii.e-f; **GRANTED** for minimum guarantee values and royalty rates, *supra* § III.B.4.ii.a. |

24cv923

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---|---|---|---|
| | ¶ 84 | Trade secret and privacy – third party names, length of the agreement, royalty rates and minimum guarantee | **DENIED WITHOUT PREJUDICE** for length of agreement and third party names, *supra* §§ III.B.4.ii.e-f; **GRANTED** for minimum guarantee values and royalty rates, *supra* § III.B.4.ii.a. |
| | ¶ 86 | Trade secret and privacy – Confidential settlement of litigation | **GRANTED**, the Court finds that confidential settlement information is "traditionally kept secret" for which there are "compelling reasons" to keep such information under seal. *See e.g., Al Otro Lado, Inc. v. Mayorkas*, No. 317CV02366BASKSC, 2021 WL 666861, at *2 (S.D. Cal. Feb. 19, 2021) (citing *Kamakana*, 447 F.3d at 1178). |
| | ¶¶ 93–95 | Trade secret and privacy – third party names, length of the agreement, royalty rates and minimum guarantee | **DENIED WITHOUT PREJUDICE** for length of agreement and third party names, *supra* §§ III.B.4.ii.e-f; **GRANTED** for minimum guarantee values and royalty rates, *supra* § III.B.4.ii.a. |
| | ¶¶ 97–99 | Trade secret and privacy – third party names, length of the agreement, scope of license | **DENIED WITHOUT PREJUDICE**, *supra* §§ III.B.4.ii.e-f |

24cv923

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---|---|---|---|
| | ¶¶ 99–102 | Trade secret and privacy – third party names, length of the agreement, scope of license and partner attributes | **DENIED WITHOUT PREJUDICE** for third party names and length of agreement *supra* §§ III.B.4.ii.e-f; **GRANTED** for partner attributes, since redacted portions relate to Upper Deck and its licensors' proprietary business strategies, *supra* §§ III.B.4.ii.b-d. |
| | ¶ 103 | Trade secret and privacy – scope of license and partner attributes | **GRANTED**, since redacted portions relate to Upper Deck and its licensors' proprietary business strategies, *supra* §§ III.B.4.ii.b-d. |
| | ¶ 107 | Trade secret – Pixels sales data spreadsheet | **GRANTED**, *supra* § III.B.4.i. |
| | ¶ 110 | Trade secret and privacy – scope of license and third party names | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.e. |
| | ¶ 112 | Trade secret and privacy – scope of license and third party names and business trade secrets | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.e. |
| | ¶¶ 113–114 | Trade secret and privacy – scope of license and third party names | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.e. |
| | ¶¶ 115, 118 | Trade secret and privacy – amount of damages and third party names | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.e. |

24cv923

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---|---|---|---|
| | ¶¶ 119–120 | Trade secret and privacy – third party names, length of the agreement, royalty rates and minimum guarantee and damage calculations | **DENIED WITHOUT PREJUDICE**, for third party names and length of agreement, *supra* § III.B.4.ii.e-f; **GRANTED** for royalty rates, minimum guarantee values and damages calculations, *supra* § III.B.4.ii.a. |
| | ¶¶ 121–122 | Trade secret and privacy – third party names, length of the agreement, royalty rates and minimum guarantee and damage calculations and business trade secrets | **DENIED WITHOUT PREJUDICE**, for third party names and length of agreement, *supra* § III.B.4.ii.e-f; **GRANTED** for royalty rates, minimum guarantee values and damages calculations, *supra* § III.B.4.ii.a; **DENIED WITHOUT PREJUDICE** for "business trade secrets" *See In re Sotera Wireless, Inc.*, 591 B.R. at 462 ("[T]he mere statement that something is a trade secret falls far short of what the Court needs to find that [movant] has met its burden of proof. . .").|
| | ¶¶ 124–127 | Trade secret and privacy – third party names, length of the agreement, royalty rates and minimum guarantee and damage calculations | **DENIED WITHOUT PREJUDICE**, for third party names and length of agreement, *supra* § III.B.4.ii.e-f; **GRANTED** for royalty rates, minimum guarantee values and damages calculations, *supra* § III.B.4.ii.a |

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---|---|---|---|
| | ¶ 127 | Trade secret and privacy – damage calculations | **GRANTED**, *supra* § III.B.4.ii.a |
| | ¶¶ 132–133 | Trade secret and privacy – damage calculations and Pixels sales data spreadsheet | **GRANTED**, *supra* § III.B.4.ii.a |
| | p. 81 – List of interviewees | Privacy – third parties and expert witness information | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.e. |
| | Schedule 1 (Table of Upper Deck's Sublicenses) | Trade secret and privacy – third party names and scope of license and agreement length | **DENIED WITHOUT PREJUDICE** for third party names, length of agreement, and scope of license, *supra* § III.B.4.ii.e-f; |
| | Schedule 2.1(Sales and Royalties –Trends International) | Trade secret and privacy – third party names and scope of license and royalty and payment information | **DENIED WITHOUT PREJUDICE** for third party names and length of agreement, *supra* § III.B.4.ii.e-f; **GRANTED** for royalty rates, minimum guarantee values and damages calculations, *supra* § III.B.4.ii.a. |
| | Schedule 2.2 (Sales and Royalties) | Trade secret and privacy – sales data | **GRANTED**, *supra* § III.B.4.ii.a |
| | Schedule 3 (Pixel Sales – Detail) | Trade secret and privacy – Pixels sales data | **GRANTED**, *supra* § III.B.4.ii.a |
| | Schedule 3.1 (Pixels Sales – Sales by Product Type) | Trade secret and privacy – Pixels sales data | **GRANTED**, *supra* § III.B.4.ii.a |

24cv923

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---|---|---|---|
| | Schedule 3.2 (Pixels Sales – Sales by Artist Name) | Trade secret and privacy – Pixels sales data | **GRANTED**, *supra* § III.B.4.ii.a |
| | Schedule 3.3 (Pixels Sales – Sales by Artwork Name) | Trade secret and privacy – Pixels sales data | **GRANTED**, *supra* § III.B.4.ii.a |
| | Schedule 3.4 (Pixels Sales – List of Images by Artist) | Trade secret and privacy – Pixels sales data | **GRANTED**, *supra* § III.B.4.ii.a |
| Exhibit 105 to Pixels' Motion to Seal (ECF No. 78) | Email chain between Upper Deck's president and Jump 23, Inc. The scope of the Jordan license and enforcement of the license are being discussed by upper management in a trade secret discussion, which would be advantageous for competitors and | The scope of the Jordan license and enforcement of the license are being discussed by upper management in a trade secret discussion, which would be advantageous for competitors and unscrupulous actors to know. | **GRANTED**, since sealed exhibits relate to Upper Deck and its licensors' proprietary business negotiations, *supra* §§ III.B.4.ii.b-d. |

- 34 -

24cv923

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---|---|---|---|
| | unscrupulous actors to know. | | |
| Exhibit F to Upper Deck's Motion to Seal (ECF No. 102) | Pixels' Sales Data, which the entire document should be filed under seal in conformity with the Court's July 28, 2025 Order as it is the same document the Court previously granted a Motion to Seal-- Additionally, Plaintiff seeks to redact Exhibit 9 attached to | It is the same document the Court previously granted a Motion to Seal-- Additionally, Plaintiff seeks to redact Exhibit 9 attached to Plaintiff's Motion for Summary Adjudication. (ECF No. 81.) Defendant responds in support, noting that this document contains confidential sales and contributor information. (See ECF No. 87-1 at ¶5.) Exhibit 9 clearly contains Defendant's sales data. (ECF No. 83-4.) The Court finds that protecting this sales data | **GRANTED**, since the Court has previously sealed the same document, *supra* § III.B.4.i. |

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---------|----------|--------------------------------------|----------------|
|  | Plaintiff's Motion for Summary Adjudication. (ECF No. 81.) Defendant responds in support, noting that this document contains confidential sales and contributor information. (See ECF No. 87-1 at ¶5.) Exhibit 9 clearly contains Defendant's sales data. (ECF No. 83-4.) The Court finds that protecting this sales data presents a compelling reason to seal. | presents a compelling reason to seal. |  |
| Exhibit M to Upper Deck's Motion to | ¶ 17 and footnote 23 | Trade secret and privacy – date of agreement and alternatives to signatures | **DENIED WITHOUT PREJUDICE** for date of agreement, *supra* § III.B.4.ii.f |

24cv923

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---------|----------|--------------------------------------|----------------|
| Seal (ECF No. 102) | ¶ 19 | Trade secret and privacy – third party names | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.e |
| | ¶ 23 and footnote 46 and 47 | Trade secret and privacy – pixels sales data and damage calculations | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.i. |
| | ¶¶ 32–33 | Trade secret and privacy – Pixels sales data and damage calculations and alternatives to signatures | **DENIED WITHOUT PREJUDICE**, *supra* §§ III.B.4.i, III.B.4.ii.c. |
| | Footnote 61 | Trade secret and privacy – scope of license | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.f. |
| | ¶¶ 34–35 | Trade secret and privacy – pixels sales data and damage calculations | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.i. |
| | ¶¶ 42–43 | Trade secret and privacy – pixels sales data and damage calculations | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.i |
| | ¶ 47 | Trade secret and privacy – third party names and length of agreement | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.e-f |
| | ¶¶ 48–50 | Trade secret and privacy – third party names and length of agreement and minimum guarantee and royalty rates | **DENIED WITHOUT PREJUDICE**, for third party names and length of agreement, *supra* § III.B.4.ii.e-f; **GRANTED** for royalty rates, minimum guarantee values, *supra* § III.B.4.ii.a |

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---|---|---|---|
| | ¶¶ 50–53 | Trade secret and privacy – third party names and length of agreement and minimum guarantee and royalty rates | **DENIED WITHOUT PREJUDICE**, for third party names and length of agreement, *supra* § III.B.4.ii.e-f; **GRANTED** for royalty rates, minimum guarantee values, *supra* § III.B.4.ii.a |
| | ¶¶ 54–55 | Trade secret and privacy – third party names and length of agreement | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.e-f |
| | ¶¶ 56–57 | Trade secret and privacy – third party names and length of agreement and minimum guarantee and royalty rates | **DENIED WITHOUT PREJUDICE**, for third party names and length of agreement, *supra* § III.B.4.ii.e-f; **GRANTED** for royalty rates, minimum guarantee values and damages calculations, *supra* § III.B.4.ii.a |
| | ¶¶ 57–59 | Trade secret and privacy – third party names and length of agreement and minimum guarantee and royalty rates | **DENIED WITHOUT PREJUDICE**, for third party names and length of agreement, *supra* § III.B.4.ii.e-f; **GRANTED** for royalty rates, minimum guarantee values, *supra* § III.B.4.ii.a |
| | ¶¶ 60–62 | Trade secret and privacy – third party names and length of agreement and minimum guarantee and royalty rates | **DENIED WITHOUT PREJUDICE**, for third party names and length of agreement, *supra* § III.B.4.ii.e-f; **GRANTED** for royalty rates, minimum guarantee values, *supra* § III.B.4.ii.a |

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---|---|---|---|
| | ¶¶ 62–64 | Trade secret and privacy – third party names and length of agreement and minimum guarantee and royalty rates | **DENIED WITHOUT PREJUDICE**, for third party names and length of agreement, *supra* § III.B.4.ii.e-f; **GRANTED** for royalty rates, minimum guarantee values, *supra* § III.B.4.ii.a |
| | ¶ 64 | Trade secret and privacy – damage calculation | **GRANTED**, *supra* § III.B.4.ii.a |
| | ¶ 65 | Trade secret and privacy – third party names | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.e |
| | ¶¶ 66–67 | Trade secret and privacy – third party names and length of agreement | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.e-f |
| | ¶¶ 67–69 | Trade secret and privacy – third party names and minimum guarantee and royalty rates | **DENIED WITHOUT PREJUDICE**, for third party names, *supra* § III.B.4.ii.e; **GRANTED** for royalty rates, minimum guarantee values, *supra* § III.B.4.ii.a |
| | ¶¶ 69–71 | Trade secret and privacy – third party names and length of agreement and minimum guarantee and royalty rates | **DENIED WITHOUT PREJUDICE**, for third party names and length of agreement, *supra* § III.B.4.ii.e-f; **GRANTED** for royalty rates, minimum guarantee values, *supra* § III.B.4.ii.a |
| | ¶ 71 | Trade secret and privacy – third party names | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.e |

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---|---|---|---|
| | ¶¶ 71–72 | Trade secret and privacy – third party names | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.e |
| | ¶¶ 72–74 | Trade secret and privacy – third party names and length of agreement and minimum guarantee and royalty rates | **DENIED WITHOUT PREJUDICE**, for third party names and length of agreement, *supra* § III.B.4.ii.e-f; **GRANTED** for royalty rates, minimum guarantee values, *supra* § III.B.4.ii.a |
| | ¶ 75 | Trade secret and privacy – third party names | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.e |
| | ¶ 77 and footnote 175 | Trade secret and privacy – third party names and length of agreement and personal requirements and scope of license | **DENIED WITHOUT PREJUDICE**, for third party names; and scope and length of agreement, *supra* § III.B.4.ii.e-f; **GRANTED** for personal requirements *supra* § III.B.4.ii.d. |
| | ¶¶ 77–78 | Trade secret and privacy – third party names and length of agreement and minimum guarantee and royalty rates | **DENIED WITHOUT PREJUDICE**, for third party names and length of agreement, *supra* § III.B.4.ii.e-f; **GRANTED** for royalty rates, minimum guarantee values, *supra* § III.B.4.ii.a |
| | ¶ 79 | Trade secret and privacy –length of agreement | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.f |
| | ¶ 80 | Trade secret and privacy – personal requirements | **GRANTED**, *supra* § III.B.4.ii.d. |

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---|---|---|---|
| | ¶ 81 | Trade secret and privacy –length of agreement | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.f |
| | ¶ 82 | Trade secret and privacy – third party names, royalty rates | **DENIED WITHOUT PREJUDICE**, for third party names, *supra* § III.B.4.ii.e; **GRANTED** for royalty rates, *supra* § III.B.4.ii.a. |
| | ¶ 89 | Trade secret and privacy –length of agreement | **DENIED WITHOUT PREJUDICE**, *supra* § III.B.4.ii.f |
| | ¶ 89 | Trade secret sales data from Pixels | **GRANTED**, *supra* § III.B.4.ii.a. |
| | ¶¶ 91–92 | Trade secret and privacy –sales data and third party names and royalty rates | **DENIED WITHOUT PREJUDICE**, for third party names, *supra* § III.B.4.ii.e-f; **GRANTED** for sales data *supra* § III.B.4.i, royalty rates, minimum guarantee values, *supra* § III.B.4.ii.a |
| | ¶¶ 92–94 | Trade secret and privacy –sales data and third party names and royalty rates and minimum guarantees | **DENIED WITHOUT PREJUDICE**, for third party names and length of agreement, *supra* § III.B.4.ii.e-f; **GRANTED** for sales data, *supra* § III.B.4.i, and minimum guarantee values, *supra* § III.B.4.ii.a |
| | ¶¶ 95–97 | Trade secret and privacy –sales data and royalty rates | **GRANTED**, *supra* §§ III.B.4.i, III.B.4.ii.a |
| | ¶¶ 98–100 | Trade secret and privacy –sales data | **GRANTED**, *supra* §§ III.B.4.i, III.B.4.ii.a |

24cv923

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---|---|---|---|
| | | and royalty rates and damage calculations | |
| | Exhibit 3 | Sales data and damage calculations | **GRANTED,** *supra* § III.B.4.i |
| | Exhibit 4 | Sales data and damage calculations | **GRANTED,** *supra* § III.B.4.i |
| | Exhibit 5.1 | Sales data and damage calculations | **GRANTED,** *supra* § III.B.4.i |
| | Exhibit 5.2 | Sales data and damage calculations | **GRANTED,** *supra* § III.B.4.i |
| | Exhibit 6.1 | Sales data and damage calculations | **GRANTED,** *supra* § III.B.4.i |
| | Exhibit 6.2 | Sales data and damage calculations | **GRANTED,** *supra* § III.B.4.i |
| | Exhibit 7.1 | Sales data and damage calculations | **GRANTED,** *supra* § III.B.4.i |
| | Exhibit 7.2 | Sales data and damage calculations | **GRANTED,** *supra* § III.B.4.i |
| | Exhibit 9 | Third party names and sales data and royalty amounts | **DENIED WITHOUT PREJUDICE,** for third party names, *supra* § III.B.4.ii.e; **GRANTED** for sales data, *supra* § III.B.4.i, and royalty amounts, *supra* § III.B.4.ii.a |
| | Exhibit 10 | Third party names and sales data and royalty amounts | **DENIED WITHOUT PREJUDICE,** for third party names, *supra* § III.B.4.ii.e; **GRANTED** for sales data, *supra* § III.B.4.i, and royalty amounts, *supra* § III.B.4.ii.a |

24cv923

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 114) | Court's Ruling |
|---------|----------|--------------------------------------|----------------|
| | Exhibit 11.1 | Trade secret and privacy – third party names and length of agreement and minimum guarantee and royalty rates | **DENIED WITHOUT PREJUDICE**, for third party names and length of agreement, *supra* § III.B.4.ii.e-f; **GRANTED** for sales data, *supra* § III.B.4.i, and royalty amounts, *supra* § III.B.4.ii.a |
| | Exhibit 11.2 | Sales data and royalty rate | **GRANTED**, *supra* §§ III.B.4.i, III.B.4.ii.a |

24cv923