UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UPPER DECK COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>PIXELS.COM, LLC,<br><br>Defendant. | Case No. 24-cv-00923-BAS-DEB<br><br>**ORDER:**<br>    **(1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO SEAL (ECF No. 164); AND**<br><br>    **(2) GRANTING PLAINTIFF'S MOTION TO SEAL (ECF No. 169)** |

Presently before the Court is Plaintiff Upper Deck Company's ("Upper Deck") renewed motions to seal. (ECF Nos. 164, 169.) For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Upper Deck's motion (ECF No. 164) in accordance with Appendix A. The Court **GRANTS** Upper Deck's motion (ECF No. 169) in accordance with Appendix B.

## I.    BACKGROUND

Defendant Pixels.com ("Pixels") allegedly interfered with Upper Deck's exclusive rights to use intellectual property assets associated with the brand of world-famous basketball player, Michael Jordan ("Jordan"), to develop sports memorabilia. More

24cv923

specifically, Pixels allegedly advertised and sold products appropriating Jordan's likeness online without either Upper Deck's or Jordan's permission. (ECF No. 24 ¶¶ 25–35.) Upper Deck obtained the rights to use Michael Jordan's likeness through licensing agreements. (*Id*. ¶¶19–24.) Furthermore, Pixels' products also allegedly misappropriated Upper Deck's own trademarks—including Upper Deck's logo. (*Id*. ¶ 11.)

On May 28, 2024, Upper Deck initiated this action against Defendant Pixels.com ("Pixels"). (ECF No. 1.) On October 1, 2024, Upper Deck filed the operative complaint in this action alleging causes of action, *inter alia*, for: (1) false advertising and unfair competition claims under the Lanham Act, 15 U.S.C.A. § 1125(a); (2) trademark dilution under the Lanham Act, 15 U.S.C.A. § 1125(c); (3) trademark infringement under 15 U.S.C.A. § 1114; (4) deprivation of rights of publicity, Cal. Civ. Code § 3344; (5) deprivation of rights of publicity under California common law; (6) unfair competition under California statutory, Cal. Bus. & Prof. Code § 17200 *et seq*, and common law. (ECF No. 24.)

Throughout the course of this action, both parties filed motions to seal. (*See* ECF Nos. 75, 78, 81, 88, 91, 95, 97, 102, 107.) The Court granted in part and denied in part Parties' motions (*see* ECF Nos. 110, 160, 163.) Now pending before the Court are Upper Deck's motions to seal portions of expert reports, third-party sublicensing agreements attached to Parties' motions for summary judgment (ECF No. 164), and portions of exhibits attached to Parties' pretrial disclosures (ECF No. 169).

In ECF No. 164, Upper Deck moved to seal specific portions of the following documents:

1. An executed agreement between Brevettar, LLC and Trends International, LLC for Trends International, LLC to sublicense Brevettar, LLC's rights to use Michael Jordan's intellectual property (ECF No. 165, Ex. 20);

2. An expert report by Upper Deck's expert, Christian Tregillis (ECF No. 165-1, Ex. 94);

3. An expert report by Pixels' expert, Lindsey Fisher. (ECF No. 165-2, Ex. M.)

24cv923

In ECF No. 169, Upper Deck moved to seal portions of the following exhibits attached to pretrial disclosures:

4. An email exchange between third-parties Estee Portnoy and Dwight Manley dated June 10, 2021. (ECF No. 170, Ex. 2.)

5. An email exchange between Jason Masherah (Upper Deck) and third-party Estee Portnoy dated March 14, 2024. (ECF No. 170-1, Ex. 3.)

6. An email exchange between Estee Portnoy and Jason Masherah dated between April 1, 2021 and April 5, 2021. (ECF No. 170-2, Ex. 4.)

7. An email exchange between Estee Portnoy and Jason Masherah dated between April 23, 2021 and April 27, 2021. (ECF No. 170-3, Ex. 5.)

8. An email exchange between Estee Portnoy and Jason Masherah dated between April 23, 2021 through April 30, 2021. (ECF No. 170-4, Ex. 6.)

In this Order, the Court evaluates Upper Deck's pending motions to seal above. (ECF Nos. 164, 169.)

## II.    LEGAL STANDARD

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citing *Foltz v. State Farm Mut. Auto Ins. Co.,* 331 F.3d 1122, 1135 (9th Cir. 2003)). "The presumption of access is 'based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.'" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2nd Cir. 1995)).

24cv923

A party seeking to seal a judicial record bears the burden of overcoming the strong presumption of access. *Foltz*, 331 F.3d at 1135. The showing required to meet this burden depends upon whether the documents to be sealed relate to a motion that is "more than tangentially related to the merits of the case." *Ctr. for Auto Safety*, 809 F.3d at 1101. When the underlying motion is more than tangentially related to the merits, the "compelling reasons" standard applies. *Id*. at 1096–98. When the underlying motion does not surpass the tangential relevance threshold, the "good cause" standard applies. *Id*.

"In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon*, 435 U.S. at 598). As to this last category, courts have been willing to seal court filings containing confidential business material, "such as marketing strategies, product development plans, licensing agreements, and profit, cost, and margin data," where the parties have been able to point to concrete factual information to justify sealing. *See, e.g., Cohen v. Trump*, No. 13-cv-2519-GPC-WVG, 2016 WL 3036302, at *5 (S.D. Cal. May 27, 2016). However, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179. Similarly, it is not enough to "mention[] a general category of privilege, without any further elaboration or any specific linkage with the documents." *Id*. at 1184. A blanket protective order is not itself sufficient to show "good cause," let alone compelling reasons, for sealing particular documents. *See Foltz*, 331 F.3d at 1133; *San Jose Mercury News, Inc. v. U.S. Dist. Ct., N. Dist*., 187 F.3d 1096, 1103 (9th Cir. 1999). The decision to seal documents is "one best left to the sound discretion of the trial court" upon consideration of the "relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599.

In addition, parties moving to seal documents must comply with the procedures set forth in this Court's Standing Order for filing documents under seal. *See* Standing Order

24cv923

of the Hon. Cynthia Bashant for Civil Cases § 5. These procedures limit sealing to "only those documents, or portions thereof, necessary to protect such sensitive information." *Id*. Thus, although sometimes it may be appropriate to seal a document in its entirety, whenever possible, a party must redact. *See Kamakana*, 447 F.3d at 1183 (noting a preference for redactions so long as they "have the virtue of being limited and clear"); *Murphy v. Kavo Am. Corp*., No. 11-cv-00410-YGR, 2012 WL 1497489, at \*2–3 (N.D. Cal. Apr. 27, 2012) (denying motion to seal exhibits but directing parties to redact confidential information).

## III.    ANALYSIS

### A.    Whether Upper Deck Presents Compelling Reasons for its Proposed Redactions (ECF No. 164)

#### 1.    Related Documents More Than Tangentially Related to Merits

As the Court previously found (ECF No. 110 at 4:6-16; ECF No. 160 at 6:8-17), Upper Deck's proposed documents to seal are more than "tangentially related to the merits" when filed in connection with Parties' summary judgment motions (ECF Nos. 74, 79). *See Pac. Marine Propellers, Inc. v. Wartsila Def., Inc.*, No. 17-CV-555-L-NLS, 2018 WL 11457880, at \*1 (S.D. Cal. Nov. 5, 2018) ("The compelling reasons standard applies to all motions except those that are only 'tangentially related to the merits of a case.'. . . Defendants' summary judgment motion is more than tangentially related to the merits") (citing *Kamakana*, 447 F.3d at 1179). As such, the Court finds Upper Deck's renewed motion to seal (ECF No. 164) is subject to the "compelling reasons" standard in *Kamakana*, 447 F.3d at 1179.

#### 2.    "Compelling Reasons" Legal Standard

Preventing the release of trade secrets generally constitutes a compelling reason to seal such documents. *Kamakana,* 447 F.3d at 1179; *see also Nixon,* 435 U.S. at 598 (observing that the "common-law right of inspection has bowed before the power of a court to insure that its records" are not used as "sources of business information that might harm a litigant's competitive standing"); *Apple Inc. v. Samsung Elecs. Co.,* 727 F.3d 1214, 1226–

24cv923

28 (Fed.Cir.2013) (holding that under Ninth Circuit law, detailed product-specific information and internal reports are appropriate to seal under the "compelling reasons" standard where that information could be used to the company's competitive disadvantage).

A "trade secret may consist of any formula, pattern, device or compilation of information which is used in [the party]'s business, and which gives [the party] an opportunity to obtain an advantage over competitors who do not know or use it." *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569–70 (9th Cir. 2008) (citing *Restatement of Torts* § 757, cmt. B); *see also Clark v. Bunker,* 453 F.2d 1006, 1009 (9th Cir.1972) (adopting the Restatement definition and finding that "a detailed plan for the creation, promotion, financing, and sale of contracts" constitutes a trade secret); *Whyte v. Schlage Lock Co.,* 101 Cal.App.4th 1443, 1455-56 (2002).

Even if proposed material for sealing does not constitute a trade secret, it may still be sealable as confidential business information. *See In re Elec. Arts, Inc.*, 298 F. App'x at 569 (finding sealable "business information that might harm a litigant's competitive standing"); *see also Ctr. for Auto Safety*, 809 F.3d at 1097 (citing *Nixon,* 435 U.S. at 598–599) ("sources of business information that might harm a litigant's competitive standing" are subject to sealing); *see also In re Qualcomm Litig.*, No. 3:17-cv-0108-GPC-MDD, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (sealing is warranted to prevent competitors from "gaining insight into the parties' business model and strategy"); *see also Garrity Power Servs. LLC v. Samsung Elecs. Co.*, No. 21-MC-80159-JSC, 2021 WL 3473937, at *1 (N.D. Cal. July 29, 2021) ("confidential business information in the form of 'license agreements, financial terms, details of confidential licensing negotiations, and business strategies' is sealable").

However, not all business information is so confidential or sensitive that it must be sealed. *See, e.g., Open Text S.A. v. Box, Inc.*, No. 13-04910, 2014 WL 7368594, at *3 (N.D. Cal. Dec. 26, 2014) (declining to seal, for example, information about a litigant's "product design and source code and highly confidential and competitively sensitive business information including usage data," in the absence of demonstrating "specific

- 6 -

24cv923

compelling reasons"); *GoDaddy.com LLC v. RPost Commc'ns Ltd.,* No. 14-00126, 2014 WL 2117349, at *1 (D. Ariz. May 21, 2014) ("[A] party's allegations that material is 'confidential' or 'business information' are insufficient to justify sealing court records containing such material unless the party proves the existence of compelling reasons such as those set forth in *Kamakana . . .* "[O]nly in extremely limited circumstances will confidential information actually merit the sealing of court records.").

Importantly, "[t]he proponent of sealing bears the burden with respect to sealing. A failure to meet that burden means that the default posture of public access prevails." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1182 (9th Cir. 2006).

### 3.   "Narrowly Tailored" Legal Standard

"Only those documents, or portions thereof, necessary to protect such sensitive information" may be sealed.  Standing Order § 5.A.  As such, whenever possible, the moving party must redact only what is necessary.  *See Kamakana*, 447 F.3d at 1183; *Murphy*, 2012 WL 1497489, at *2–3.  Redactions must be narrowly tailored such that only information that meets the compelling reasons standard is redacted.  *See Kamakana*, 447 F.3d at 1183 (highlighting the "limited and clear" nature and specificity of the redactions); *ImprimisRx, LLC v. OSRX, Inc.*, No. 21-cv-01305-BAS-DL, 2023 WL 7029210, at *4 (S.D. Cal. Oct. 24, 2023) (rejecting redactions that were insufficiently tailored).  The moving party must provide the compelling reason justifying the proposed redactions.  *Foltz*, 331 F.3d at 1135.

Litigation predicated upon contracts cannot be conducted in secret.  *JBS Packerland, Inc. v. Phillips Cattle Co., Inc.*, No. 24-cv-01299-BAS-MSB, 2024 WL 4280960, at *2 (S.D. Cal. Sept. 24, 2024).  The public has the right to know the gist of the underlying agreements in order to understand the court's rulings.  *Id*.  Accordingly, mere vague or ambiguous references to sealed documents, without any discussion of the substance of the sealed documents, do not meet the compelling reasons standard.  *See Nia v. Bank of Am., N.A.*, No. 21-cv-1799-BAS-BGS, 2024 WL 171659, at *9 (S.D. Cal. Jan. 12, 2024);

24cv923

*ImprimisRx, LLC*, 2023 WL 7029210, at *5.  Information already available to the public also cannot meet the compelling reasons standard.  *See id*. at 1184.

### 4.     Analysis of Compelling Reasons

#### i.       Financial Data (*e.g.*, Gross Revenue Amount, and Sales Data) and Damages Calculation

"Sales data may constitute a trade secret if it is not readily ascertainable from a public source but instead developed with a substantial amount of time, effort, and money." *Yeiser Rsch. & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1046 (S.D. Cal. 2017). The Court has previously found that Pixels' financial data and damages calculations based on Pixels' sales data are subject to sealing.  (ECF No. 110 at 10:21–11:20; ECF No. 160 at 9:11-24.)

Here, Upper Deck also moves to seal portions of its expert declarations containing product pricing. "[U]nder Ninth Circuit law, detailed product-specific financial information and customer information may be sealed under the 'compelling reasons' standard" where that information could harm the company's competitive standing. *Ovonic Battery Co., Inc. v. Sanyo Elec. Co., Ltd*, No. 14-CV-01637-JD, 2014 WL 2758756, at *2 (N.D. Cal. June 17, 2014) (citing *Apple Inc.*, 727 F.3d at 1226, 1228) (finding that parties had a significant interest in preventing the release of product-specific financial information because it could harm their competitive standing). Finally, in the interest of narrowly tailoring Upper Deck's proposed redactions, the Court specifically finds that the sealing of specific numerical values of financial data is proper (*e.g.*, product-specific financial information, sales data, and gross revenue). *See In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. C 09-1967 CW, 2014 WL 662545, at *1 (N.D. Cal. Feb. 20, 2014) ("only the specific dollar amounts. . . may be sealed"); *O'Bannon*, 2014 WL 12997312, at *1 (same).

Thus, the Court **GRANTS** Upper Deck's request to seal numerical values of Pixels' financial data and of experts' damages calculations based upon Pixels' financial data. (ECF No. 110 at 10:21–11:20; ECF No. 160 at 9:11-24.)

24cv923

### ii. Licensing Agreement Terms

The Ninth Circuit has held that licensing agreement terms are sealable trade secrets when such terms provide a plan for the formation and sale of contracts. *In re Elec. Arts, Inc.*, 298 F. App'x at 569–70 (finding license agreement to be a trade secret); *France Telecom S.A. v. Marvell Semiconductor Inc.*, No. 12-CV-04967-WHO, 2014 WL 4965995, at *3 (N.D. Cal. Oct. 3, 2014) ("the information at issue—terms of a license agreement—constitutes trade secrets and is properly sealed"). Those terms may constitute trade secrets because their public disclosure may hinder the trade secret holder's market competitiveness and participation. *See e.g.*, *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2014 WL 662545, at *1 ("Because the public disclosure of some of these terms may undermine NCAA's ability to negotiate future licensing agreements with other broadcasters, these terms may be sealed.").

However, there are limitations on the extent to which terms of a licensing agreement can be sealed. In this section, the Court evaluates whether certain licensing terms that Upper Deck seeks to redact (and references to those terms) constitute sealable trade secrets.

### a. Royalty Rate, Minimum Guarantee, and Compensation Clauses

As discussed in this Court's prior order (ECF No. 160 § III.B.4.ii.a), it is well-established in the Ninth Circuit that "pricing terms, royalty rates, and guaranteed minimum payment terms" of licensing agreements are sealable trade secrets. *In re Elec. Arts, Inc.*, 298 F. App'x at 569–70; *see also Clark v. Bunker,* 453 F.2d 1006, 1009 (9th Cir.1972) (adopting the Restatement definition and finding that "a detailed plan for the creation, promotion, financing, and sale of contracts" constitutes a trade secret) (citing *Whyte v. Schlage Lock Co.,* 101 Cal.App.4th 1443, 1455-56 (2002)). However, courts within the Ninth Circuit have agreed that sealing only specific numerical values within such terms is appropriate to ensure that redactions are narrowly tailored. *See In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2014 WL 662545, at *1 ("only the specific dollar amounts. . . may be sealed"); *O'Bannon*, 2014 WL 12997312, at *1 (same). Here, Upper

24cv923

Deck moves again to seal royalty information in a licensing agreement. (*See* ECF No. 164 at 3:17–4:19). Since the Court previously granted redacting numerical values in licensing clauses regarding royalty rates, minimum guarantees, and compensation and references to those values in other documents (*e.g.*, expert reports) (*see* ECF No. 160 § III.B.4.ii.a), the Court **GRANTS** Upper Deck's request to do so here (ECF No. 164).

### b.    Sample Review and Approval

As discussed in this Court's prior order (ECF No. 160 § III.B.4.ii.b), terms detailing the process through which Upper Deck—as licensee of certain intellectual property assets—submits its products for review by its licensor can also constitute trade secrets. Those terms provide a blueprint for product development strategy, which if revealed, could provide competitors an economic advantage. *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09md2087 BTM (AJB), 2011 WL 864897, *2 (S.D. Cal. Mar. 11, 2011) (finding compelling reasons to seal documents containing information revealing business and marketing strategy and product development); *see also In re ConAgra Foods, Inc.*, No. CV1105379MMMAGRX, 2014 WL 12577132, at *5 (C.D. Cal. July 11, 2014) (finding compelling reasons to seal given "the inclusion of trade secrets such as a company's internal strategies, marketing research, sales data, and product development plans").

Here, Upper Deck moves to seal the number of samples that Upper Deck submits to Jump 23 for review and approval prior to distribution in its expert report. (*See* ECF No. 164 at 4:23-27, 5:11-15.) Since the Court has previously held Upper Deck can seal the number of samples for review from the terms of its licensing agreements (ECF No. 160 § III.B.4.ii.b), the Court **GRANTS** Upper Deck's request to redact expert report references to the number of samples for review and approval provided by licensing agreements. (*See* ECF No. 164 at 4:23-27, 5:11-15.)

### c.    Signature-Related Terms

Upper Deck further moves to redact signature alternatives that its licensor agreed for Michael Jordan to contribute for the development of Upper Deck's products and services. As discussed in this Court's prior order (ECF No. 160 § III.B.4.ii.c), terms related to the

- 10 -

24cv923

provision of signatures are part of the product development process and thus, are trade secrets. *In re Hydroxycut Mktg. & Sales Practices Litig.*, 2011 WL 864897, *2 (finding compelling reasons to seal documents containing information revealing business and marketing strategy and product development).

Here, Upper Deck moves to seal expert report references to licensing agreement terms detailing alternatives to signatures. (*See* ECF No. 164 at 6:5-8, 6:18-20.)  Since the Court has previously held Upper Deck can seal licensing terms detailing alternatives to signatures (ECF No. 160 § III.B.4.ii.c), the Court **GRANTS** Upper Deck's request to redact expert report references to signature alternatives provided in licensing agreements. (*See* ECF No. 164 at 6:5-8, 6:18-20.)

### d.   Third-Party Information (*e.g.*, Names)

This Court has previously held (ECF No. 160 § III.B.4.ii.e) that the identities of third parties are generally not sealable as trade secrets unless the movant "provide[s] a particularized showing that specific harm will result if the [identities are] made publicly available." *Apple Inc. v. Samsung Elecs. Co.,* No. 11-CV-01846 LHK PSG, 2012 WL 4120541, at *2 (N.D. Cal. Sept. 18, 2012); *see also Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-CV-00564 NC, 2018 WL 10472795, at *2 (N.D. Cal. Apr. 23, 2018) ("The identity of Dr. Pepper's third-party vender, Givaudan is not sealable as a trade secret under the compelling reasons standard").

Here, Upper Deck moves to redact portions of expert reports including the names of third parties. (*See* ECF No. 164 at 5:18-27.)  Since its first motion to seal, Upper Deck has still not provided any justification for how specifically revealing the identities of third parties would result in particularized harm to its market position.  Further, Upper Deck has failed to allege how third-party information involves any other privacy interests that "outweigh the traditional right of public access" in *Kamakana*, 447 F.3d at 1178.  *See also Bunsow De Mory LLP v. N. Forty Consulting LLC*, No. 20-CV-04997-JSC, 2021 WL 4521143, at *7 (N.D. Cal. Jan. 22, 2021) (rejecting motion to seal because "the names of third-parties in this action constitute neither trade secrets nor confidential information").

24cv923

Though the identities of third parties in licensing agreements may be sealable in some circumstances, such as when the "existence of the agreement[s]. . . [are] not otherwise publicly known," Upper Deck has failed to allege any such circumstances here for their proposed redactions of third-party names, such as "Mr. Crystal," "Trends," and "Ikonick", in its expert report (Ex. 94 ¶ ¶ 114, 121). *See Huawei*, 340 F. Supp. 3d at 1004.

Thus, the Court **DENIES WITHOUT PREJUDICE** Upper Deck's requested redactions of third-party information, such as names of entities and the parties' employees or agents. (*See* ECF No. 164 at 5:18-27.)

### iii. Business Negotiations Qualify as Confidential Business Information

Even if business negotiations do not amount to a trade secret, they are nonetheless sealable as "sources of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 589; *see also Garrity*, 2021 WL 3473937, at *1 ("confidential business information in the form of 'license agreements, financial terms, details of confidential licensing negotiations, and business strategies' is sealable").

Here, Upper Deck seeks to seal documented discussions between Mr. Crystal and Mr. Tregellis regarding license contract negotiations and Upper Deck's negotiating position. (*See* ECF No. 164 at 5:18-27 (seeking to seal Ex. 94 ¶ 114).) Upper Deck alleges that this is "[t]rade secret and privacy . . . [t]he discussion about Mr. Crystal's thoughts about license negotiations with vendors should be redacted, in conformity with the Court's reasoning in Order [ECF No. 160] at Section III(B)(ii)(a)." The Court does not find the rationale for sealing Ex. 94 ¶ 114 under ECF No. 160 § III.B.4.ii.a, as a trade secret, to be sound. However, after reviewing Ex. 94 ¶ 114, the Court finds Upper Deck's proposed redaction is a confidential licensing negotiation—which is a type of confidential business information sealable under the compelling reasons standard. *See Garrity*, 2021 WL 3473937, at *1.

Thus, the Court **GRANTS** Upper Deck's request to seal Ex. 94 ¶ 114 as a confidential business negotiation. (*See* ECF No. 164 at 5:18-27.)

24cv923

**B.    Whether Upper Deck Presents Good Cause for its Proposed Redactions (ECF No. 169)**

### 1.    Documents Only Tangentially Related to Merits

The Court finds that Pixels' exhibits that Upper Deck seeks to seal from ECF. No 169 are only "tangentially related" to the merits of the case, since they are originally attached to Pixels' non-dispositive pretrial disclosures (ECF No. 130). *Ctr. for Auto Safety*, 809 F.3d at 1098–1101 ("Discovery-related motions are often unrelated to the merits of a case."). Accordingly, the Court applies the "good cause" standard, rather than the more exacting "compelling reasons" standard it applied in its prior orders (ECF Nos. 110, 160.) *Id*.

### 2.    "Good Cause" Legal Standard

Federal Rule of Civil Procedure ("Rule") 26(c) states that when a party or other person from whom discovery is sought makes a motion asserting good cause for a protective order, "the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," based on any of several listed reasons. As previously mentioned, the Ninth Circuit applies the "good cause" standard—adopted from Rule 26(c)—to evaluate requests to seal documents related to non-dispositive motions. *See Kamakana*, 447 F.3d at 1180; *Foltz*, 331 F.3d at 1130; *Phillips v. Gen. Motors,* 307 F.3d 1206, 1212 (9th Cir.2002). Pertinent here, Rule 26(c)(1)(G) states that a court may "requir[e] that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no court order is granted. *Foltz*, 331 F.3d at 1130–31; *see also Beckman,* 966 F.2d at 476 ("[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.").

Additionally, the "good cause" standard is less exacting than the "compelling reasons" standard applied to evaluating sealing documents related to dispositive motions.

*See Ctr. for Auto Safety*, 809 F.3d at 1098–1101; *Skillz Platform Inc. v. AviaGames Inc.*, No. 21-CV-02436-BLF, 2023 WL 8430369, at *2 (N.D. Cal. Dec. 4, 2023). Thus, information that would be sealable under the "compelling reasons" standard is also sealable under the "good cause" standard. *Id.*

### 3.    Analysis

Courts have been willing to seal court filings containing confidential business material, "such as marketing strategies, product development plans, licensing agreements, and profit, cost, and margin data," where the parties have been able to point to concrete factual information to justify sealing. *See, e.g., Cohen v. Trump*, No. 13-cv-2519-GPC-WVG, 2016 WL 3036302, at *5 (S.D. Cal. May 27, 2016); *see also Skillz Platform Inc. v. AviaGames Inc.*, No. 21-CV-02436-BLF, 2023 WL 8430369, at *2 (N.D. Cal. Dec. 4, 2023) ("[C]onfidential business information that would harm a party's competitive standing meet[s] the compelling reasons standard, and thus also meet[s] the 'less exacting' good cause standard.").

Third-party information is typically not alone sufficient grounds for sealing. *Jones v. PGA Tour, Inc.*, No. 22-CV-04486-BLF, 2023 WL 3594058, at *3 (N.D. Cal. May 22, 2023) ("[T]he fact that disclosure would reveal the substance of communications with non-parties does not, by itself, demonstrate good cause for sealing."). However, courts within this Circuit have sealed "documents contain[ing] information regarding the identity and operations of third party supplied components in [movant]'s products" as confidential business information. *See e.g.*, *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 14-CV-05330-HSG, 2020 WL 210318, at *8 (N.D. Cal. Jan. 14, 2020), *aff'd*, 845 F. App'x 963 (Fed. Cir. 2021).

Lastly, "documents containing private information should be filed in redacted form rather than sealed in their entirety." *Murphy v. Kavo Am. Corp.*, No. CV 11 0410 YGR, 2012 WL 1497489, at *3 (N.D. Cal. Apr. 27, 2012) (citing *Foltz*, 331 F.3d at 1137) (finding no good cause to seal documents in their entirety where a small number of confidential details could be redacted with minimal effort).

24cv923

Here, Upper Deck moves to file the proposed exhibits under seal on the basis that they involve "[d]iscussion of nonfungible tokens and the names of decisionmakers between Upper Deck's senior management and key strategic partner Jump 23 [which] would allow competitors with an undue advantage if publicly known."  (ECF No. 169.)  Upper Deck has sufficiently alleged that the disclosure of the confidential business information contained in the email exchanges (*i.e.*, concerning the proprietary development of Upper Deck's products, including the involvement of third parties) would create specific harm by allowing competitors with an undue advantage.  *Foltz*, 331 F.3d at 1130–31; *see also Beckman,* 966 F.2d at 476.  Additionally, Upper Deck has established good cause by providing the declaration of Gabriel Garcia who, as the Senior Director of Upper Deck Authenticated (the memorabilia and collectibles division of Upper Deck), has knowledge of the documents sought to be sealed.  (ECF No. 169-6.)  *See Orthopaedic Hosp. v. Encore Med. L.P.*, No. 19-CV-970 JLS (AHG), 2022 WL 257104, at *3 (S.D. Cal. Jan. 27, 2022); *see also Kilbourne v. Coca-Cola Co.*, No. 14CV984-MMA BGS, 2015 WL 5117080, at *3 (S.D. Cal. July 29, 2015) (finding good cause where "defendants have filed a supplemental declaration under seal detailing with particularity the exhibits that contain confidential information and the manner in which disclosure of such information would be detrimental to Defendants or otherwise improper.").

Garcia alleged that the information, if allowed into the public domain, "would provide competitors with (1) the names of the decision-makers, (2) insight into highly confidential negotiations for rights between Upper Deck's President Jason Masherah and Jump 23's Senior Vice President, Estee Portnoy, and (3) litigation settlement discussions and strategy."  (ECF No. 169-6.)  Garcia claims that the disclosure of such information would be detrimental to Upper Deck's business operations by providing competitors with insights into Upper Deck's processes, harming their competitive standing.  *See e.g., In re Elec. Arts, Inc.*, 298 F. App'x at 569 (finding sealable "business information that might harm a litigant's competitive standing"); *Lin v. Solta Med., Inc.*, No. 21-CV-05062-PJH, 2024 WL 2112893, at *3 (N.D. Cal. Apr. 11, 2024) (finding good cause where movant

- 15 -

24cv923

alleged competitors would gain insight into internal processes if not for sealing); *Fed. Trade Comm'n v. Qualcomm, Inc.*, No. 17-cv-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019) (finding compelling reasons for "information that, if published, may harm [a party's] or third parties' competitive standing and divulges terms of confidential contracts, contract negotiations, or trade secrets"). Furthermore, the request is not overbroad as Upper Deck only seeks to redact confidential details rather than the documents in their entirety. *See Foltz*, 331 F.3d at 1137.

Thus, Upper Deck sufficiently alleged that the disclosure of this information would allow competitors with an undue advantage if publicly known. *See In re Elec. Arts, Inc.*, 298 F. App'x at 569. Since this information meets the compelling reasons standard, it also meets the less stringent good cause standard. *See Ctr. for Auto Safety*, 809 F.3d at 1098–1101.

Upper Deck has demonstrated its proposed sealings qualify as "business negotiations," and thus, established good cause for sealing them. As such, the Court thus **GRANTS** Upper Deck's motion to seal. (ECF No. 169.)

* * *

The Court includes Appendix A and B, providing an individual ruling on each of Upper Deck's proposed redactions.

**IV.    CONCLUSION**

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** Upper Deck's renewed motion to seal (ECF No. 164), in accordance with Appendix A. Additionally, the Court **GRANTS** Upper Deck's renewed motion to seal (ECF No. 169), in accordance with Appendix B.

If Upper Deck or Pixels wishes to file a renewed motion to seal for the denied requests in ECF No. 164, they may do so no later than **<u>March 6, 2026</u>**, after the issuance of this order. To the extent either Party wishes to renew its motion to seal for any document or portion thereof, that party is **ORDERED** to append to its briefing a table similar to that in the Appendices to this Order listing: the title of the document, the ECF number of the

- 16 -

public document, the ECF number of the lodgment, the page and line number(s) *or* the section *or* paragraph numbers of the proposed redactions (or stating that the party wishes to seal the entirety of the document), and the compelling reason for sealing each proposed redaction or document.

Otherwise, Upper Deck and Pixels are instructed to file the unredacted versions of the aforementioned documents in ECF No. 164 as directed by the Court in this Order on the public docket no later than **March 6, 2026**.  Parties shall publicly file on CM/ECF as a "Notice Regarding Exhibit Attachment" revised versions of these documents with only those redactions that the Court has approved.  When filing the documents on the public docket, Parties must strictly adhere to the relevant Federal Rules of Civil Procedure, this district's Civil Local Rules, this Court's Standing Order for Civil Cases, and this district's Electronic Case Filing Administrative Policies & Procedures Manual.  Non-compliance with this order or any relevant rules may result in sanctions pursuant to Civil Local Rule 83.1.  Further, the Clerk of Court shall **ACCEPT** and **FILE UNDER SEAL** any documents accompanying ECF No. 165 and 170.

**IT IS SO ORDERED.**

**DATED: February 26, 2026**

_Cynthia Bashant_
**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

24cv923

**APPENDIX A**

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 164) | Court's Ruling |
|---|---|---|---|
| Exhibit 20 to Upper Deck's Renewed Motion to Seal (ECF No. 165) – Licensing Agreement between Brevettar and Trends International, LLC | | Trade secret and privacy – Royalty information. These redactions should be made, even though Appendix A to the Order currently lists these items as having been DENIED WITHOUT PREJUDICE. In the December 9, 2025 Order at pages 10-11, the Court noted in Section III(B)(4)(ii)(a): It is well-established in the Ninth Circuit that "pricing terms, royalty rates, and guaranteed minimum payment terms" are sealable trade secrets. *In re Elec. Arts, Inc.*, 298 F. App'x at 569–70; *see also Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir.1972) | In ECF No. 160, the Court inadvertently denied Upper Deck's request to redact royalty information in its appendix. In this Order, the Court **GRANTS** Upper Deck's request, *supra* § III.A.4.ii.a. |
| | UpperDeck 67, § E | (adopting the Restatement | |

- 18 -

24cv923

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 164) | Court's Ruling |
|---------|----------|--------------------------------------|----------------|
| | | definition and finding that "a detailed plan for the creation, promotion, financing, and sale of contracts" constitutes a trade secret) (citing *Whyte v. Schlage Lock Co.*, 101 Cal.App.4th 1443, 1455-56, 125 Cal.Rptr.2d 277 (2002)). Thus, the Court GRANTS sealing the specific numerical values of royalty rate minimum guarantee and compensation terms. *See In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2014 WL 662545, at *1 ("only the specific dollar amounts. . . may be sealed"); *O'Bannon*, 2014 WL 12997312, at *1 (same). To clarify, the numerical values of royalty rates, | |

- 19 -

24cv923

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 164) | Court's Ruling |
|---|---|---|---|
| | | minimum guarantee, and compensation should also be sealed in other documents (such as expert reports) discussing those values. | |
| | UpperDeck 68, § F | Trade secret and privacy – Minimum Guarantee. The minimum guarantees should remain out of the public's view, in conformity with the Court's reasoning in Order at Section III(B)(4)(ii)(a). | **GRANTED**, *supra* § III.A.4.ii.a. |
| | UpperDeck 68, § G | Trade secret – The number of samples should remain out of the public's view, in conformity with the Court's reasoning in December 8, 2025 Order at Section III(B)(4)(ii)(b). | **GRANTED**, *supra* § III.A.4.ii.b. |
| | UpperDeck 68, § H | Trade secret and privacy – Royalty information and guarantee payments. The | **GRANTED**, *supra* § III.A.4.ii.a. |

24cv923

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 164) | Court's Ruling |
|---|---|---|---|
| | | percentages for damage contingencies should remain out of the public's view, in conformity with the Court's reasoning in December 9, 2025 Order at Section III(B)(4)(ii)(a). | |
| Exhibit 20 to Upper Deck's Renewed Motion to Seal (ECF No. 165-1) | ¶ 51 | Trade secret – number of samples. The number of samples should remain out of the public's view, in conformity with the Court's reasoning in Order at Section III(B)(4)(ii)(b). | **GRANTED**, *supra* § III.A.4.ii.b. |
| | ¶ 55 | Trade secret and privacy – The percentage attributed to the three athletes should be redacted, in conformity with the Court's reasoning in Order at Section III(B)(4)(ii)(a). | **GRANTED**, *supra* § III.A.4.ii.a. |
| | ¶ 114 | Trade secret and privacy – The | **GRANTED IN PART** regarding Upper Deck's requested redaction of |

24cv923

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 164) | Court's Ruling |
|---|---|---|---|
|  |  | discussion about Mr. Crystal's thoughts about license negotiations with vendors should be redacted, in conformity with the Court's reasoning in Order at Section III(B)(4)(ii). | text beyond third-party names as confidential business negotiations, *supra* § III.A.4.iii; **DENIED IN PART WITHOUT PREJUDICE** regarding Upper Deck's requested redaction of third-party names, *supra* § III.A.4.ii.d. |
|  | ¶ 121 | Trade secret and privacy – The discussion about Mr. Crystal's thoughts about license negotiations with vendors and pricing should be redacted, in conformity with the Court's reasoning in Order at Section III(B)(4)(ii). | **GRANTED IN PART** regarding Upper Deck's requested redaction of specific numerical values *supra* § III.A.4.i; **DENIED WITHOUT PREJUDICE** regarding Upper Deck's requested redaction of discussion about license negotiations with vendors and pricing *supra* § III.A.4.ii; **DENIED WITHOUT PREJUDICE** regarding Upper Deck's requested redaction of third-party names, *supra* § III.A.4.ii.d. In ECF No. 164, Upper Deck only moves to seal "[t]he discussion about Mr. Crystal's thoughts about license negotiation with vendors" in the second half of the paragraph in Ex. 94 ¶ 121. Considering their request, the Court finds the cost of the posters to be financial information *supra* § III.A.4.i. The rest of the paragraph is not sealable because it does not constitute financial data *supra* § III.A.4.i, licensing agreement terms *supra* § III.A.4.ii, nor business negotiations |

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 164) | Court's Ruling |
|---|---|---|---|
|  |  |  | *supra* § III.A.4.iii. The discussions merely described their sublicenses rather than any ongoing or past business negotiations. Therefore, the remainder of the paragraph is not sealable based on Upper Deck's reasoning. Additionally, Upper Deck has not demonstrated that the information does not include boilerplate sublicensing terms. (ECF No. 160 § III.B.4.ii.f.) |
| Exhibit M to Upper Deck's Renewed Motion to Seal (ECF No. 165-2) | Footnote 23 | Trade secret and privacy – alternatives to signatures. Alternatives to signatures are trade secret information and should be redacted in conformity with the Court's reasoning in Order at Section III(B)(4)(ii). | **GRANTED**. Upper Deck moves to seal signature alternatives under ECF No. 160 § III.B.4.ii (stating licensing terms are generally sealable). The Court more specifically finds that it is finds signature alternatives are sealable *supra* § III.A.4.ii.c. |
|  | ¶ 23 and footnote 46 and 47 | Trade secret and privacy – pixels sales data and damage calculations. Information about royalty rates and damages calculations should be redacted in conformity with the Court's reasoning in Order | **GRANTED**, *supra* §§ III.A.4.i, III.A.4.ii.a. |

- 23 -

24cv923

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 164) | Court's Ruling |
|---|---|---|---|
| | | at Section III(B)(4)(ii)(a). | |
| | ¶ 32 | Trade secret and privacy – Information about royalty rates and damages calculations should be redacted in conformity with the Court's reasoning in Order at Section III(B)(4)(ii)(a). | **GRANTED**, *supra* §§ III.A.4.i, III.A.4.ii.a. |
| | ¶ 33 | Trade secret and privacy – Alternatives to signatures are trade secrets and should be redacted in conformity with the Court's reasoning in Order at Section III(B)(4)(ii). | **GRANTED**. Upper Deck moves to seal signature alternatives under ECF No. 160 § III.B.4.ii (stating licensing terms are generally sealable). The Court more specifically finds that it is finds signature alternatives are sealable *supra* § III.A.4.ii.c. |
| | ¶ 34 and footnote 61 | Trade secret and privacy – scope of license. Information about sales data and composition of types of products should be redacted in conformity with the Court's reasoning in Order at Section III(B)(4)(ii). | **GRANTED**, *supra* § III.A.4.i. |

24cv923

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 164) | Court's Ruling |
|---|---|---|---|
| | ¶ 35 | Trade secret and privacy – pixels sales data and damage calculations. Information about damages calculations should be redacted in conformity with the Court's reasoning in Order at Section III(B)(4)(ii). | **GRANTED**, *supra* § III.A.4.i. |
| | ¶ 42 | Trade secret and privacy – pixels sales data and damage calculations. Information about sales data should be redacted in conformity with the Court's reasoning in Order at Section III(B)(4)(ii). | **GRANTED**, *supra* § III.A.4.i. |
| | ¶ 43 | Trade secret and privacy – pixels sales data and damage calculations. Information about damages calculations should be redacted in conformity with the Court's | **GRANTED**, *supra* § III.A.4.i. |

24cv923

| Exhibit | Pin Cite | Upper Deck's Reasoning (ECF No. 164) | Court's Ruling |
|---|---|---|---|
|  |  | reasoning in Order at Section III(B)(4)(ii). |  |

24cv923

**APPENDIX B**

| Exhibit | Description | Upper Deck's Reasoning (ECF No. 169) | Court's Ruling |
|---|---|---|---|
| Exhibit 2 to Upper Deck's Renewed Motion to Seal (ECF No. 170) | Email exchange between Estee Portnoy and Dwight Manley dated June 10, 2021 (UpperDeck_002290). | Discussion of nonfungible tokens and the names of decisionmakers and litigation strategy between Upper Deck's senior management and key strategic partner Jump 23 would allow competitors with an undue advantage if publicly known. | **GRANTED**, *supra* § III.B.3. |
| Exhibit 3 to Upper Deck's Renewed Motion to Seal (ECF No. 170-1) | Email exchange between Jason Masherah and Estee Portnoy dated March 14, 2024 (UpperDeck_002499-2500). | Discussion of nonfungible tokens and the names of decisionmakers and litigation strategy between Upper Deck's senior management and key strategic partner Jump 23 would allow competitors with an undue advantage if publicly known. | **GRANTED**, *supra* § III.B.3. |

24cv923

| Exhibit | Description | Upper Deck's Reasoning (ECF No. 169) | Court's Ruling |
|---|---|---|---|
| Exhibit 4 to Upper Deck's Motion to Seal (ECF No. 170-2) | Email exchange between Estee Portnoy and Jason Masherah dated between April 1-5, 2021 (UpperDeck_002283-84). | Discussion of nonfungible tokens and the names of decisionmakers and litigation strategy between Upper Deck's senior management and key strategic partner Jump 23 would allow competitors with an undue advantage if publicly known. | **GRANTED**, *supra* § III.B.3. |
| Exhibit 5 to Upper Deck's Motion to Seal (ECF No. 170-3) | Email exchange between Estee Portnoy and Jason Masherah dated between April 23-27, 2021 (UpperDeck_002285-86). | Discussion of nonfungible tokens and the names of decisionmakers and litigation strategy between Upper Deck's senior management and key strategic partner Jump 23 would allow competitors with an undue advantage if publicly known. | **GRANTED**, *supra* § III.B.3. |
| Exhibit 6 to Upper Deck's Motion to | Email exchange between Estee | Discussion of nonfungible | **GRANTED**, *supra* § III.B.3. |

24cv923

| Exhibit | Description | Upper Deck's Reasoning (ECF No. 169) | Court's Ruling |
|---|---|---|---|
| Seal (ECF No. 170-4) | Portnoy and Jason Masherah dated between April 23-30, 2021 (UpperDeck _002287-89). | tokens and the names of decisionmakers and litigation strategy between Upper Deck's senior management and key strategic partner Jump 23 would allow competitors with an undue advantage if publicly known. | |

- 29 -

24cv923